### AETNA INSURANCE COMPANY, OF HARTFORD, CONNECTICUT, v. R. O. BRANNON.

#### No. 1492. Decided December 11, 1905.

**1.—Insurance Policy—Location of Property—Misdescription.**

A policy of fire insurance which guarantees indemnity for loss of the property while contained in a certain described building, it being known to both parties to be in another building not answering such description, and intended to be insured while so situated, does not, by its terms, cover a loss by the burning of the building where it was in fact situated, and the mistake is not merely one in description which could be ignored if other sufficient and correct description of the property was given by which it could be identified. (Pp. 396, 397.)

**2.—Same—Pleading—Judgment.**

Plaintiff could only recover for loss of the property in such case by alleging and proving the facts entitling him to reform the contract for mistake in the description so as to make it cover the property while located in the building where it was situated and destroyed; but under our blended system of law and equity it was not necessary to first maintain action to reform the contract before

suing on it; nor was it necessary, in suing for recovery on his contract, with allegation of the facts entitling him to its reformation, that he should pray for or obtain a formal judgment of reformation; he would be entitled to a direct judgment in accordance with the true contract thus shown.  (Pp. 397, 398.)

### 3.—Reformation of Contract—Estoppel.

The doctrine of estoppel is not applicable to a defendant against whom his contract is sought to be reformed for mistake except in the sense that he will be bound by his own acts and words in the transaction and will not be heard to assert a secret fraudulent intention not to be bound by them as showing that a written instrument prepared by him and departing from the terms agreed on was not made by mistake on his part.  (Pp. 398, 399.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Bastrop County.

*Alexander & Thompson, Fowler & Fowler,* and *A. H. McKnight,* for appellant.—In a suit upon a policy of insurance the plaintiff can not recover for a loss to property in a location not covered by the contract. Aetna Ins. Co. v. Brannon, 81 S. W., 560; Underwriters Ins. Co. v. Henry, 79 S. W., 1072; British-Am. Assurance Co. v. Miller, 91 Texas, 414; Bradbury v. Insurance Ass'n of Eng., 15 Atl., 34; Mawhinney v. Southern Ins. Co., 32 Pac., 945; 15 A. & E. Enc. of Law, 2d ed., pp. 122-3.

The petition shows upon its face that the policy executed and delivered did not cover on property in the location where plaintiff's corn and hay were destroyed by fire.  Same authorities.

The petition does not allege facts showing a contract between the parties covering on the property in the location where it was destroyed. Cowen v. Equitable Life Assur. Society, 11 Texas Ct. Rep., 809; Hartford Fire Ins. Co. v. Trimble (Ky.), 78 S. W., 462; Clark v. Insurance Co. of N. Am., 35 L. R. A., 276; Mutual Life Ins. Co. v. Young, 23 Wall., 85; Piedmont & A. Life Ins. Co. v. Ewing, 92 U. S., 377.

The petition does not state facts entitling plaintiff to a reformation of the policy so as to make it cover on property in the negro cabin. Cowen v. Equitable Life Assur. Society, 11 Texas Ct. Rep., 812.; Moore v. Giesecke, 76 Texas, 543; German Ins. Co. v. Daniels, 33 S. W., 549.

In the absence of an issue looking to the reformation of the policy statements of fact showing a mistake in the description of the location of the property are immaterial to any issue made by plaintiff's pleadings.

To make a mistake in stating the location of the property a basis for the reformation of the policy, the mistake, in the absence of any fraud, must be the mutual mistake of the parties to the contract.  Underwriters' Fire Ass'n. v. Henry, 79 S. W., 1072; Westchester Fire Ins. Co. v. Wagner, 38 S. W., 214; Finks v. Hollis, 11 Texas Ct. Rep., 857; May v. San Antonio & A. P. Townsite Co., 83 Texas, 505; Hearne v. Marine Ins. Co., 20 Wall., 480; Hill v. Pettit, 66 S. W., 189; Pritchett v. Frisby, 63 S. W., 10.

*J. S. Jones* and *Dyer Moore,* for appellee.—Where the assured correctly states to the agent of the company the location of the property to be insured, and the agent through his carelessness, without the knowl-

edge of the assured, misdescribes such location in the policy, the fact may be alleged and proved and the company will be estopped from setting up such misdescription as a defense. Queen Ins. Co. of America v. May, 43 S. W., 73; Fire Association, of Philadelphia, v. Bynum, 44 S. W., 579; Phoenix Ins. Co. v. Allen, Jr., 10 N. E. R., 85; Home Ins. Co. v. Lewis, 48 Texas, 630-2; Aetna Ins. Co. v. Holcomb, 89 Texas, 404; Joyce on Insurance, secs. 472, 473, 474, 533; Ostr. Ins., pp. 92, 93; Wood on Insurance, secs. 153, 154; special attention is invited to the reference in Joyce on Insurance.

If a misdescription of the location of personal property was written in the policy by the agent without the knowledge or consent of plaintiff, it was a fact which they were entitled to aver in their complaint, and to prove at the trial without asking reformation of the policy, and if such be shown, the defendant is estopped from setting up such misdescription as a defense to the action. Same authorities; also Dunbar v. Phoenix Ins. Co., 40 N. W. Rep., 386; Joyce on Insurance, sec. 473.

WILLIAMS, ASSOCIATE JUSTICE.—Certified questions from the Court of Civil Appeals of the Third District as follows:

"The Court of Civil Appeals of the Third Supreme Judicial District of Texas, as preliminary to certifying the hereinafter stated questions, and as part of this certificate, states that the above styled and numbered cause is now pending in the Court of Civil Appeals of the Third Supreme Judicial District, on appeal from the County Court of Bastrop County; that the suit was brought by the appellee Brannon in the County Court against appellant, on a policy of insurance covering the corn and hay located in a certain building which was destroyed by fire on October 17, 1903. The amount sued for was $975, and verdict and judgment in the court below was in appellee's favor for $460.45.

"Plaintiff's amended petition on which the case was tried, substantially alleged that on the 2d of October, before and afterwards, he was the owner of 1,600 bushels of corn and 700 bales of hay, and that on that date the defendant issued its policy covering the same, to an amount not exceeding $975.00, $650 on the corn and $325 on the hay; that on the 17th day of October, the property was totally destroyed by fire; notice of loss by plaintiff, payment of premiums and demand of payment from the company for the value of the property destroyed. The petition made the policy an exhibit thereto. The policy described the property as being located in a two-story log building, while occupied as a barn. It was further averred in the petition that the agent had been informed as to the location of the corn and hay sought to be insured, and that he, in writing the policy, through inadvertence, carelessness or mistake, misdescribed the building in which the property was located; that if the misdescription was not made through inadvertence, carelessness or mistake of the agent, that it was fraudulently made by the agent for the purpose and with the intention of defeating a recovery on the policy in the event of a fire; that at the time plaintiff applied for the policy he gave the agent the correct location of the property; that the plaintiff accepted the policy in ignorance of the misdescription, and did not discover the mistake in the description until after the fire; and the petition contains this averment: 'Plaintiff fur-

ther says that the building in which said corn and hay was located is described in said policy as "The two story wood roof log building, while occupied as a barn, and situated one-half mile west of Bastrop, Texas," whereas, in truth and in fact said corn and hay was at the time of the issuance of said policy and at the time of the occurrence of said fire and destruction of said property, located and contained in a wood roof negro cabin, known as the "old kitchen," which was distant about fifty yards from the wood roof log barn described in said policy.' The petition concludes with a prayer for judgment for the value of the property with interest and costs, and for general relief. There was no prayer or request made for reformation of the policy on the ground of the mistake or fraud in the description.

"The defendant answered by general and special exceptions and general denial and pleaded the provisions of the policy relating to any misrepresentation and breach thereof by plaintiff; that the policy covered corn and hay while in the building therein described and not elsewhere and that that building had not been burned or damaged by fire; that the plaintiff had the policy in his possession and was guilty of negligence in not reading the same and discovering the mistake, if any, in the location.

"We find the following facts: That on the 2d day of October, 1903, the policy sued on was executed and delivered by the appellant company, through its agent, A. B. McLavy, to the appellee, R. O. Brannon; that it insured the property against loss and damage by fire to the 2d day of October, 1904, and provided as follows: 'To an amount not exceeding $975 .to the following described property while located and contained as described herein and not elsewhere, to wit: None on the two story wood roof log building with adjoining and communicating additions, while occupied as a barn and situated one-half mile west of Bastrop, Texas; $650 on corn in the ear therein and $325 on hay in bales therein.' This description is written on a separate slip, which is pasted on the face of the policy. This policy contains the usual stipulation that the company shall not be liable beyond the actual cash value of the property at the time of loss, etc., and that the policy shall be void if the insured have concealed, misrepresented in writing or otherwise any material fact or circumstance concerning this insurance or the subject thereof, or in case of any fraud or false swearing by the insured touching any matter relating to this insurance, or the subject thereof, whether before or after loss. The evidence justifies the conclusion that the contract of insurance was made with the agent of the company, and that he had the authority to make the contract and to issue the policy.

"The insurance agent, before and at the time that the policy was issued was informed that the corn and hay desired to be insured was located in the negro cabin, or old kitchen, which the evidence shows was about fifty yards from where the barn described in the policy was located. And upon this branch of the case, while there is a conflict in the evidence, we are justified from the facts in concluding that the agent knew that the corn and hay sought to be insured and desired to be insured by the plaintiff was in the negro cabin, and not in the building described in the policy at the time that the agent executed the policy,

and at the time that he delivered it to the plaintiff or to the father for the plaintiff's benefit, and at the time the premium was received by the agent and paid to him.

"The building actually described in the policy was not destroyed by fire, but the negro cabin in which the corn and hay of the plaintiff was situated when insured, was all destroyed by fire on October 17, 1903. The building described in the policy at the time the contract of insurance was issued and the fire occurred, did contain some corn and hay, but it did not belong to the plaintiff. The corn and hay that was destroyed, located in the negro cabin, was all that was owned by the appellee at the time that the policy was issued.

"Although the agent of the insurance company that issued the policy, in effect, testified that it was his intention to insure the corn and hay located in the building mentioned in the policy, and that he would not have insured the corn and hay if he had known that it was located in the negro cabin, we are justified, in view of other evidence in the record to conclude that the agent, at the time he issued the policy, had been informed that the plaintiff's corn and hay was located in the negro cabin, and that it was the intention and purpose of the policy to cover the corn and hay owned by him and none other, and that the agent in describing the building in which it was located made a mistake in writing the description in the policy, and that the policy should have covered and described the corn and hay located in the negro cabin, instead of in the barn described in the policy.

"We also find that when the agent delivered the policy, he stated to the plaintiff that it was all right; that the plaintiff accepted the policy without reading it and did not read it or discover the misdescription until after the corn and hay had been destroyed by fire. The plaintiff's petition does not expressly allege that the insurance company is or was estopped by reason of the mistake of the agent, and his actual knowledge as to the true location of the property at the time that the policy was issued; but the facts as stated and pleaded are construed by this court as tantamount to averments alleging an estoppel against the insurance company to take advantage of the misdescription in the policy.

"The case upon the part of the appellee was tried in the court below and submitted to the jury by the trial court upon the theory that the insurance company would be estopped for the actual knowledge of the agent as to the situation and location of the property, and his mistake in misdescribing the same.

"It is contended by the appellant that there is no uncertainty or ambiguity upon the face of the policy with reference to the description of the property; that the corn and hay was insured only so long as it was located in the two story barn, and as that was not destroyed by fire, the insurance company could not be held liable, unless in an action to reform and correct the description, either upon the ground of fraud upon the part of the agent, or that such misdescription was the result of the mutual mistake of the parties to the contract. This theory of the appellant is preserved and presented in this court by several assignments of error, complaining of the action of the trial court in several particulars.

"In view of this statement, we certify to the Supreme Court the following questions:

"1.—Which of the two theories is correct?

"2.—Would the plaintiff be entitled to recover without the necessity of having the contract reformed as to description, upon proof of the mistake of the agent in issuing the policy in misdescribing the location or place where the corn and hay were situated, provided the appellee received and accepted the policy without actual knowledge of such misdescription, and did not discover same before the property was destroyed by fire; and provided, that the agent, at the time he issued and delivered the policy, knew of the correct location and situation of the property insured; and provided, the intention was to insure the property that was actually destroyed?

"3.—Under the facts as stated, did the writing into the policy by the agent of the misdescription of the property estop the appellant from setting up such misdescription as a defense? and, in such a case, can the true description be established by extrinsic evidence, merely in an action at law on the policy, when there is no effort to reform?

"As possibly lessening the labors of the court, we respectfully suggest that the following authorities on both sides of the question are the nearest in point that we have been able to discover.

"Those having a tendency to support the theory of the appellee, and the judgment below, are: Home Insurance Co. v. Lewis, 48 Texas, 623; Texas Banking Co. v. Stone, 49 Texas, 4; Phoenix Insurance Co. v. Allen, 109 Ind., 273; Susquehanna Insurance Co. v. Cusick, 109 Pa. St., 163; State Insurance Co. v. Schreck, 27 Neb., 540; Phoenix Insurance Co. v. Gebhart, 32 Neb., 144; Glover v. National Fire Insurance Co., 85 Fed. Rep., 126; Planters Insurance Co. v. Myers, 55 Miss., 503; American Cent. Insurance Co. v. McLanathan, 11 Kan., 546; Hartford Fire Insurance Co. v. Moore, 36 S. W., 146; same case, 13 Texas Civ. App., 645. A writ of error was refused in this case.

"Those most strongly in favor of the views of the appellant are: Sanders v. Cooper, 115 N. Y., 287; Catherine Collins v. St. Paul Fire Ins. Co., 44 Minn., 440; Eggleston v. The Council Bluffs Insurance Co., 65 Iowa, 311; Martin v. Farmers' Insurance Co., 84 Iowa, 518."

That which is referred to in the questions as a misdescription of the location of the property is more. It is a stipulation—a term—of the contract that the property is insured while in the house specified and not elsewhere. There is in this no latent ambiguity, nor an ambiguity of any kind, which can be removed by parol evidence. The policy states the house in which the property is to be while insured and the evidence shows that the house was in existence and was properly described. The language used plainly applies to that house and not to another. Evidence that a different house was intended therefore contradicts the terms of the writing and a recovery can not be had upon the policy if it is to stand as the contract of the parties. Cases like Home Insurance Company v. Lewis (48 Texas, 623), are not in point. They merely apply the familiar maxim falsa demonstratio non nocet and reject one particular of description, which appears to be false, and identify the

subject matter from other particulars given in the instrument sufficient for that purpose. In this case it is a conceded fact that the policy describes the house that was not burned and no other, and to apply it to another would contradict its terms.

But this is not all of the case. The plaintiff's pleadings, in substance, allege that the contract as agreed to, was one for the insurance of the property while in the cabin, and that by the mistake or fraud of defendant's agent, and without plaintiff's knowledge, the agreement was misstated in the policy. This entitled plaintiff, under familiar principles, to an inquiry into the truth of these allegations and to equitable relief, if they were established. We are not called upon by the certificate to determine whether or not the pleading was good against special exceptions. It was sufficient to raise the issue stated and to admit evidence to establish the right asserted, and was not, as we shall see, bad merely because a reformation of the contract was not prayed for. Such being the state of the pleadings, the second question put by the certificate seems to embrace all of the facts necessary to sustain the cause of action asserted.

If both parties, as assumed by the question, knew the true situation of the corn and hay and intended to insure it as it was actually located, it would seem to be a plain case in which one contract was agreed on and another expressed in the writing. The fact that plaintiff accepted the policy without noticing the mistake would not preclude him, so far as appears from the certificate, from having the mistake corrected. Kelley v. Ward, 94 Texas, 297, and authorities cited.

This brings us to the inquiry, "would plaintiff be entitled to recover without the necessity of having the contract reformed as to description," etc., by which we understand the Court of Civil Appeals to inquire whether or not it would be necessary for the plaintiff, before he could recover the amount of the insurance upon the facts stated, to pray for and secure a decree reforming the policy; and this we answer in the negative. Since he could not recover upon the policy as written, it was necessary for him to allege and prove the facts as to the contract really made and as to the mistake in reducing it to writing; but if he did so, the remedy to which he would be entitled would be a direct judgment in accordance with the true contract thus shown, for the recovery of the money, just as if there had been first a reformation of the policy. This procedure is made proper by the abolition of all distinctions between law and equity. On this subject an eminent writer, speaking of the former practice and the effects of the reformed procedure, says: "Wherever the reformed procedure has been administered according to its plain intent, the necessity of this double judicial proceeding has been obviated; indeed, if the true spirit of the new procedure is accepted by the courts, such a separation of equitable and legal rights and remedies, and their prosecutions in distinct actions, will not perhaps be allowed. The plaintiff brings one civil action in which he alleges all the facts showing himself entitled to both the equitable and the legal reliefs needed to complete his legal right, and asks and obtains a double judgment, granting, first, the proper equitable remedy, and secondly, the legal remedy, by which his juridical posi-

tion with respect to the subject-matter is finally perfected; or he may simply demand and recover a judgment conferring only the final legal remedy, the preliminary equitable relief being assumed as an essential prerequisite to the recovery, but not being in terms awarded by the court." . . . "Whenever a plaintiff is clothed with primary rights, both legal and equitable, growing out of the same transaction or condition of facts which thus constituted a cause of action, and is entitled thereon to an equitable remedy, and also to a further legal remedy based upon the supposition that the equitable relief is granted, and he sets forth all these facts in his petition, and demands a judgment awarding both species of relief, the action will be sustained; the court will, in its judgment, formally grant both the equitable and legal relief. In these cases there is, properly considered, no joinder of different causes of action; there is only the union of different remedial rights flowing from one cause of action. Another result of the principle differs from the one just stated only in matter of form. The plaintiff, as in the last instances, is clothed with certain primary rights, both legal and equitable, arising from the same transaction or condition of facts, and is entitled to some equitable relief, and to legal relief based upon the assumption that the former relief is awarded; he avers all the necessary facts in his complaint or petition, and demands both the remedies to which he is entitled, or perhaps only the legal remedy. The court, instead of formally conferring the specific equitable remedy, and then proceeding to grant the ultimate legal remedy, may treat the former as though accomplished, and render a simple common-law judgment, embracing the final legal relief which was the real object of the suit, a recovery of money or of specific real or personal property." (Pomeroy's Equity Jur., secs. 87, 183.) That this is the proper practice in this state is shown in Taylor, Knapp & Company v. Fore (42 Texas, 256), and Roller v. Wooldridge (46 Texas, 485). It is true that the cases often speak of the necessity of reforming the instruments in order to escape their legal effect as written, but in using such language the courts are considering the rights of the parties and not the form of judgment to be given in cases where the right to a reformation is shown. Of course an action solely for the reformation of a written contract might still be maintained, especially when that is the only relief needed by the plaintiff—as would have been the case here had the plaintiff sought to correct the policy before the loss occurred. But, since the property has been destroyed, the substantial question is whether or not plaintiff is entitled to recover the insurance money, and that he may do by pleading and proving any state of facts which entitles him to it, either at law or equity. This answers the second question.

There seems to be no room for the particular application of the doctrine of estoppel referred to in the third question. Authorities are cited in which insurance companies have been held estopped to rely on clauses in their policies avoiding them because of misrepresentations, concealments, or breaches of warranties, when the matter relied on was known to, or the errors were caused by, their agents in effecting the insurance. The doctrine is now a familiar one and need not be more fully and accurately stated. It assumes that the terms of a complete

contract of insurance have been agreed on and stated in the policy and that the effort is to avoid it because of some misstatement, misrepresentation, concealment or breach of warranty on part of the insured, and prevents the company from relying on such matters when the truth was known to, or the mistake made by, the agent. Here the issue is different. The policy shows a contract to insure the property only while it is in a particular house, and plaintiff claims that through mistake it does not state the true agreement, which was to insure the property while in another house. If he succeeds in maintaining this contention he recovers on the principles of equity under which he may show a mistake in the written contract and avail himself of the one actually made, and not upon the doctrine of estoppel referred to. On the other hand it is plain that the defendant is not estopped to disprove this case; to show, if it can, that the policy correctly states the contract, or that its agent never assented to the contract alleged by plaintiff, to insure the property while in the cabin. This seems to comprehend the whole of the controversy. Of course the question whether or not the agent did assent is to be determined from what he said and did in the negotiations, and not from any uncommunicated intention he may have had. Of this Bishop says: "The words of the parties are the proper evidence of the mutual condition of their minds; and by them, irrespective of any secret purpose of one party both will be bound. Though one should intend a mere imposition or fraud on the other who acts in good faith, he will be estopped to set up such intent, so that their mutual stipulations will constitute a valid contract 'although' as it has been expressed, 'he intended only to prevaricate.'" (Bishop on Con., p. 120.)

Beyond this we see nothing in the case certified to call for the application of the doctrine of estoppel. Indeed, before the question as to the application of the estoppel could properly arise, all of the facts essential to a recovery by plaintiff under the equitable doctrine of mistake must have been established; that is, that the parties knew the true situation of the property and contracted for the insurance upon it in that situation, and that the agent misstated the situation in the policy; and hence, as we have said, here is no room for the doctrine referred to.

The first question in the certificate seems to be wholly abstract. The action and rulings of the trial court are not so stated that we can see their effect upon the rights of the parties. The theory under which the court proceeded may be entirely immaterial if plaintiff was required by the instructions given to prove all the facts essential to entitle him to the judgment, and if defendant was not unduly restricted in meeting plaintiff's case. For this reason we have not been able to answer the questions stated otherwise than by determining the legal effect of the facts stated.