## PEET v. PEORIA LIFE INS. CO.

(District Court, S. D. Texas, at Houston. December 28, 1926.)

No. 788.

Insurance ⬅➡136(5)—Facts as to acceptance held not to create contract of life insurance in accordance with application.

Where a life policy was not issued in accordance with the application, but a different contract was delivered to the applicant, who retained the same, paying annual premiums thereafter, but without any express acceptance, a court cannot construe the facts as creating a contract in accordance with the application, but it must be held that applicant accepted the substituted contract, or that the minds of the parties did not meet in any contract.

At Law. Action by Mrs. Constantia Peet against the Peoria Life Insurance Company. Judgment for defendant.

Henry J. Dannenbaum and Richard T. Fleming, both of Houston, Tex., for plaintiff.

Fred R. Switzer, of Houston, Tex., for defendant.

HUTCHESON, District Judge. The facts of this case are that on June 21, 1923, George N. Peet signed an application to the Peoria Life Insurance Company for insurance on his life in the sum of $9,500, payable in the event of his death to his widow, plaintiff herein. The application was on a printed form furnished by the insurance company, and was headed "Part I

of Application for Insurance." It applies for insurance in the sum of $7,000, with a special request for an additional $2,500. It provides for the payment of premiums annually. The plan of insurance applied for is ordinary life, W. P. Subdivision 12 of the application reads: "Make policy payable in the event of my death to Constantia Peet, wife. If proceeds of the policy are to be paid in installments, or held in trust, full instructions covering such settlement should accompany application." No such instructions accompanied the application.

At the bottom of the application, just above applicant's signature, appears this clause: "I agree, in case the company, according to its rules, should issue a policy different from that applied for above, or in case of apparent omissions or errors found by the company in this application, the company is hereby authorized to amend this application by recording the change in the space provided 'For Home Indorsement Only,' and that my acceptance of any policy issued on this application shall constitute a ratification by me of such changes or amendments."

Following the making of this application by George N. Peet, he received, whether by mail or agent's delivery is not disclosed by the evidence, three documents. Accompanying the documents is a copy of the application above referred to. Such accompanying copy of the application contains no notation whatever under the subheading "For Home Indorsement Only"; but each of the three documents contains, at the top of the page, the words "Twenty Payment Annuity Bonds Annual Dividend." The documents provide that, if Peet makes certain annual payments for a period of 20 years, he will then be paid a fixed sum by the insurance company, or a stipulated annuity for the balance of his life, or, if he dies before the end of the 20-year period, his beneficiary will receive the return of the total annual payments made, plus accumulated dividends.

Peet died on August 22, 1925, having made three annual payments to the company. There is no evidence that he did or did not read the documents, or that they were explained to him. They were found after his death among papers in a bank vault. There is evidence as to statements made by him to his partner and other persons about having acquired $9,500 additional life insurance. There was evidence that he had applied for insurance in another company, and had been declined on the

16 F.(2d)—59

ground of his not being a standard risk, and that he then went to the Peoria Life Insurance Company and made the application above set out.

While there are in plaintiff's petition allegations of fraud and mistake, there is no prayer for a reformation of the contract; plaintiff's suit being pitched upon the legal theory that a contract resulted from the application and the acceptance by the company of the offer contained in the application, which she says the law will imply from the facts in evidence. Plaintiff asserts that the annuity bonds delivered by the company to Peet cannot have the effect either of an acceptance of Peet's proposition, or of a counter offer closed by Peet's acceptance of the documents, but that, the evidence being silent as to any express rejection of Peet's offer, its acceptance must be presumed, and, the company held as though the policies applied for had been actually issued.

The defendant replies that, on the contrary, plaintiff finds herself under these facts in a dilemma, on either horn of which she must inevitably be tossed; that the case must be treated either as one in which the minds of the parties never met, if Peet did not accept the bonds, since plainly the company did not accept the offer in his application, or as one in which the minds of the parties have met by the tender of the annuity bonds as a new offer and the acceptance of them by plaintiff's decedent, thus closing the contract; that it is not possible for the court to construct a contract for life insurance out of the facts of this case; that in law it must be presumed, from the fact of the delivery of the documents and the payment of the annual premiums, that Peet had accepted them and become bound by their terms, but that, if this is not so, certainly the most that plaintiff could claim would be that no contract at all existed, because of mutual mistake; that in either event plaintiff would be entitled to only what defendant was offering, the return of the money paid with interest.

Plaintiff's point that the facts make a contract for life insurance is an interesting one, but I cannot give my assent to it. There is no evidence whatever of fraud or overreaching; none of mutual mistake. At best for plaintiff there would be only a unilateral mistake on the part of Peet. But was there a mistake at all? The documents which were sent to Peet were plainly indorsed, and upon the most casual reading gave the plainest evidence that they were

not the kind of policy that Peet had applied for. In addition, the amount of the premium actually demanded of and paid by him was different from that which in his application he had offered to pay, and this difference, though small, was sufficient to call to the attention of any ordinary person that some change had been made, and to lead inevitably to the discovery of the change.

If, however, I should surmount the fact difficulties in the way of plaintiff's case, and should find mutual mistake, or even fraud, this would be warrant, not for constructing a contract of life insurance without any evidence that the company had ever agreed to issue one, but only for giving relief against the existing contract by a decree of rescission which would give plaintiff no more than defendant now tenders.

The cases cited by plaintiff are in no particular like the case at bar. All of those cases, except the Brannon Case, were cases of executed policies which were sought to be forfeited for breach of some condition. The rationale of these decisions is well stated in McMaster v. Life Ins. Co., 183 U. S. 27, 22 S. Ct. 10, 46 L. Ed. 64: "We are dealing purely with the question of forfeiture and the rule is that if policies of insurance contain inconsistent provisions or are so framed as to be fairly open to construction, that view should be adopted, if possible, which will sustain, rather than forfeit, the contract."

In the Brannon Case, 99 Tex. 391, 89 S. W. 1057, 2 L. R. A. (N. S.) 548, 13 Ann. Cas. 1020, the Supreme Court, in answering certified questions, declared that under our general system it is competent for a court in the same case, by a single judgment, to assume the equitable relief as already accomplished, and to render a simple common-law judgment embracing the final relief. This is merely a holding that by a single judgment in the state court reformation can be effected, and relief granted on the reformed contract, without the necessity of a separate equitable proceeding.

The opinion there assumed that a contract had actually been made, which by mutual mistake had not been correctly written down. Here the evidence wholly fails to show that any such contract as plaintiff claims was ever arrived at, for it would not do to construct a contract merely out of an offer not in any manner assented to by the offeror. The principles controlling the case are expressed in Mutual Life Ins. Co. v. Young, 23 Wall. 85, 23 L. Ed. 152; Trav-elers' Ins. Co. v. Henderson (C. C. A.) 69 F. 762; Snell v. Atlantic Fire & Marine Ins. Co., 98 U. S. 85, 25 L. Ed. 52.

On the whole case, I am of the opinion that plaintiff cannot recover.