### FIRE ASS'N OF PHILADELPHIA v. HINTON. (No. 316.)*

Court of Civil Appeals of Texas. Eastland.
June 17, 1927.

Rehearing Denied Sept. 16, 1927.

1. Insurance ⟐143(3)—Showing that by reason of fraud, accident, or mistake policy was not as contemplated would entitle plaintiff to reformation or judgment according to true understanding.

If by reason of fraud, accident, or mistake a policy does not contain terms agreed upon, plaintiff on proper pleading and proof would be entitled to a reformation of the contract or to judgment according to true understanding provided recovery was not otherwise barred.

2. Reformation of instruments ⟐45(2)—Evidence of fraud, accident, or mistake warranting modification of contract must be clear and convincing.

Where fraud, accident, or mistake is relied upon to modify, substitute, or add to the terms of a written contract, the evidence must be clear and convincing that the contract as written is not the one that was contemplated by the parties.

3. Reformation of instruments ⟐45(14)—Evidence held insufficient to warrant modification of insurance contract to make it include additional property.

Evidence of fraud, accident, or mistake held insufficient to warrant modification of insurance contract so as to make it include frame building and goods therein to the rear of building actually insured.

4. Insurance ⟐335(3)—Noncompliance with record warranty clause held to preclude recovery on insurance policy if otherwise warranted.

Plaintiff's noncompliance with record warranty clause contained in insurance policy held to preclude recovery if otherwise warranted.

5. Insurance ⟐335(3)—Resort may not be had to extraneous sources for information on stock to determine whether record clause of policy has been complied with.

Resort may not be had to extraneous sources for information on stock and loss in order to determine whether or not there has been substantial compliance with provisions of insurance contract requiring insured to keep certain stock records.

6. Insurance ⟐665(4)—Recovery on fire policy held unwarranted in view of implied "distribution average clause" and state of proof.

Plaintiff in action to reform policy to make it cover goods in particular building and to recover thereon as reformed held not entitled to recover, even assuming that reformation of policy was granted, in view of "distribution average clause" read into policy under requirements of state fire insurance commission and failure of plaintiff to show value of property not destroyed.

Error from Dallas County Court at Law.

Action by H. P. Hinton against the Fire Association of Philadelphia. Judgment for plaintiff, and defendant brings error. Reversed and rendered.

Thompson, Knight, Baker & Harris, and Pinkney Grissom, all of Dallas, for plaintiff in error.

Whitehurst & Whitehurst, of Dallas, for defendant in error.

LESLIE, J. H. P. Hinton, plaintiff below, on trial of this cause recovered a judgment against the defendant, Fire Association of Philadelphia, for $718.24, alleged to be a loss from fire covered by a policy of insurance issued to him by that company through its agent W. F. Miller. The original suit was filed against both the insurance company and its agent, declaring on a loss under the terms of the policy. In a second amended petition the suit was abandoned as to the agent, Miller, but it was alleged that the policy by its terms and conditions as originally contemplated was intended to and did, in fact, cover the merchandise in the hollow tile building and in a small frame building at the rear end of the tile building.

The policy extended and was in force from March 20, 1921 to March 20, 1922, and was for $3,000, "$1,000 of which was on the one-story composition roof, hollow tile building, * * * and $1,750 on his stock of merchandise * * * only while contained in the building above described."

The fire occurred February 6, 1922, and the

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

goods destroyed thereby were, at the time, stored in the wooden structure or frame building about 35 feet to the rear of the hollow tile building. No injury resulted to the goods in the tile building or the' structure housing them. The policy nowhere refers to the building destroyed by fire or the goods stored therein at the time.

[1] From an order overruling a motion for a new trial the defendant brings error to this court. Plaintiff in error was defendant below, and the parties to this appeal will be referred to as styled in the lower court.

To special issue No. 1 the jury found that it was the intention of the parties to the insurance contract that it should cover the merchandise located in both the hollow tile building and the frame building on the rear of the lot. As a basis for this finding it was necessary for the plaintiff to establish by a preponderance of the testimony that through fraud, accident, or mistake (as he alleged) the policy by its terms failed to embrace and protect the merchandise in the wooden building. If, for either reason alleged the policy did not contain the terms agreed upon, the plaintiff upon proper pleading and proof would be entitled to a reformation of the contract to meet the original understanding, or to a direct judgment in accordance with the true understanding, provided recovery was not for some other reason defeated. Ætna Insurance Co. v. Brannon, 99 Tex. 391, 89 S. W. 1057, 2 L. R. A. (N. S.) 548, 13 Ann. Cas. 1020; Delaware Insurance Co. v. Hill (Tex. Civ. App.) 127 S. W. 283.

If reformation of the contract or direct recovery, as mentioned, has any tenable foundation, it must be upon the allegation of mistake. Prior to the erection of the hollow tile building plaintiff had placed his insurance with the agent, Miller, and at times before the erection of the hollow tile building such insurance covered the goods in each of the wooden structures on lots 22 and 23, respectively. At the completion (1918) of the hollow tile building and during a conversation between plaintiff and defendant's agent, Miller, with reference to insurance on his property, plaintiff testified on this trial:

"I mentioned insuring the wooden building, and Mr. Miller said, 'I don't believe the company will accept that, but I can insure the goods in the brick building. * * *' Now, beginning in 1916, or prior thereto, Mr. Miller mentioned to me that he guessed I had better fix the policy up as to two buildings, and then there was nothing more said about the two buildings. When I built the new building I supposed it was the same two buildings, but there was nothing more said. * * * I just supposed it covered the stock in both buildings. * * * Nothing was said except that he had written a new policy and here it was, and I paid the premium. I just supposed it covered the stock in both buildings."

The policies seem to have been left with the agent for safe-keeping at his bank. This occurred each year on a renewal thereof. The goods in the frame building would necessarily have carried a higher rate of premium than those in the tile building.

A portion of the testimony bearing on the matter under consideration has been set out, but it is fairly indicative of the proof upon which rests the plaintiff's right to reformation claim or a direct recovery on the contract alleged to have been, in fact, made.

[2] Where fraud, accident, or mistake is relied on to modify, substitute, or add to the terms of a written contract, the evidence must be clear and convincing that the contract as written is not the one that was in contemplation of the parties when they made it, and which they believed had embodied in it the terms and provisions agreed upon. In this, policies of insurance do not differ from other contracts, Merchants' & Manufacturers' Inter-Insurance Alliance v. Hansen (Tex. Civ. App.) 258 S. W. 257.

[3] The plaintiff's evidence is wholly insufficient to establish his contention of fraud, accident, or mistake, and it furnishes no sufficient basis for the finding of the jury in that respect. The assignments complaining of the sufficiency of that testimony are sustained.

[4] Conceding that the plaintiff's pleading and evidence in the respect discussed are sufficient to justify the verdict of the jury to the effect that the parties to the contract of insurance intended that its terms should extend to loss by fire of the goods in both the tile and frame buildings, there is still another and more certain and effective obstacle to the plaintiff's right to recover for the loss alleged. This lies in the failure of the plaintiff to comply with the well known record warranty clause provision of the policy:

"Record Warranty Clause (Applies to Stock Only).

"The following covenant is hereby made a part of this policy and a warranty upon the part of the assured:

"Section 1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and within twelve months of the last preceding inventory if such has been taken. Unless such an inventory has been taken within twelve calendar months prior to the date of this policy and together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of this policy, one shall be taken within thirty days after the date of this policy, or in each and either case, this entire policy shall be null and void.

"Sec. 2. The assured will make and prepare, in the regular course of business, from and after the date of this policy, a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and

on credit, or this entire policy, shall be null and void.

"The term 'Complete record of business transacted' as used above, is meant to include in said set of books, a complete record of all the property which shall go into the premises and be added to the stock, and of all property taken from the stock, whether by the assured or by others, even though not technically purchases or technically sales.

"If the business of the assured under this policy be that of manufacturing, this complete record of business transacted must, in addition, show all the raw material received and all products manufactured therefrom, including the cost of manufacture and must show waste in process of manufacture, and must show all the raw material and manufactured property which is taken from the building described.

"Sec. 3. The assured will keep and preserve all inventories of stock taken during the current year and also all those taken during the preceding calendar year, which are then on hand, showing a record of business transacted during the current calendar year and the preceding calendar year.

"The assured will also keep and preserve all inventories taken after the issuance of this policy, and all books made and prepared after the issuance hereof, showing a record of business transacted."

The plaintiff's testimony conclusively establishes that he conducted a mercantile business in the two buildings and that one set of books only was kept of that business. There is no record of what goods went into the tile building and what went into the frame building destroyed by fire. Plaintiff's own testimony establishes that he was forced to resort to his memory and his common knowledge of the goods in passing among them each day in order to determine the amount, quality, and value of those destroyed by fire. As contemplated by the policy there is no record evidence of the specific property destroyed by the fire nor the value thereof. Each day's sale went into the same cash register, and no distinction was made. The family subsistence came from the store. No record was made thereof, but it was estimated to be $40 or $50 per month. Considerable country produce was bought or bartered for throughout the year, and no record of the same was kept. It was estimated by the plaintiff to amount to some $700 per year.

Plaintiff's purported inventory of January 1, 1921, amounted to $3,264.10 and that of January 1, 1922, to $3,288.92.

Illustrative of the plaintiff's compliance with the record warranty clause reference may be had to an excerpt from his testimony:

"As to how I went about finding out what was in this wooden building, when this fire occurred, will state that I went through the building every day. I knew about what was in there, part of it separated this lot in one side, and I knew pretty near what I had in there. I cannot go to my ledger and say that there was 50 sacks of flour and 100 bales of hay in the wooden building. I would have to go in the building and count it. The books did not show. As to whether or not after the fire I could take my ledger and check up and find out how much stuff I had in the wooden building, will say that I have an invoice that will tell what the stuff would be. I understand that my invoice did not say where it was stored, but I actually carried —I can prove—I went to the inventory after the burning of the wooden building to find out how much I had in there. As to how I found out from the inventory how much I had in the wooden building, of course, I could not tell exactly what was in the building. I really had more than I figured because that we had lots of stuff I bought from farmers. I could tell about the hay and feed, because I had a little room there. The big room had never been touched. The way I could tell was just from my memory. The house was plumb full to the top. As to how I figured up how much stuff I had in the wooden building, after the fire—a man brought a lot of hay today, and it was not sold; it would be in there tomorrow if it was not burned. I did not know exactly how much I had bought. My books would show that I bought a lot of grain, so many bushels at so much for it, unless the person owed an account. A good many people gave it to me to pay back bills. I had hay and a lot of clothes in the trunk, canned goods and other merchandise in the warehouse, but when I bought a certain item of merchandise and put it in the house, my books did not show where I put it."

[5] The purpose of the record warranty clause of a fire insurance policy is too clear for discussion or to give rise to controversy. This provision provides a means by the books and records themselves for ascertaining the amount of loss, and the insured, as stated by the authorities, binds himself to provide such a means. Resort may not be had to extraneous sources for information on stock and loss in order to determine whether or not there has been substantial compliance with the provisions of the contract. Specific means for arriving at that was stipulated for in the policy under consideration, and certainly the defendant did not rest the ascertainment of its liability on the memory of the insured.

The statement of facts is made up chiefly of inventories and portions of the plaintiff's ledger which he offered in evidence in an effort to show substantial compliance with the terms of the policy in the respect discussed. That evidence covers many pages, and it would serve no useful purpose to set it out at greater length. The record impresses us that in this litigation the plaintiff's predicament is not due to any fraud or attempted fraud on his part, but rather to a careless and indifferent method of bookkeeping. Consequently we have carefully considered the contents and form of the inventories and the ledger, together with the testimony in general, and after so doing we have reached the conclusion that the plaintiff did not substantially comply with the record warranty clause of his policy, and the assignments of

error complaining of the sufficiency of the testimony in this respect must be sustained. Merchants' & Manufacturers' Lloyd's Ins. Exch. v. Southern Trading Co. (Tex. Com. App.) 229 S. W. 312; Commonwealth Underwriters' Agency of Republic Insurance Co. v. Lawrence Grocery Co. (Tex. Civ. App.) 244 S. W. 200; Hanover Fire Insurance Co. v. Moore (Tex. Com. App.) 280 S. W. 538; Royal Ins. Co. v. Kemendo, 94 Tex. 367, 61 S. W. 1102.

[6] There is still another reason why this judgment should not be permitted to stand. It was agreed by plaintiff and defendant in the trial court that the state fire insurance commission has promulgated what is known as the "distribution average clause," which was to be placed on "blanket policies." A "blanket policy" is defined by the commission as follows:

"A blanket policy is one covering under one item on building and contents, or under one item on buildings and (or) contents in buildings separated by fire walls or situated in different localities."

The "distribution average clause" promulgated by the commission is as follows:

"It is understood and agreed that the amount insured by this policy shall attach in, or on, each building, or division thereof in such proportion of the amount insured that the value in or on each building or division thereof, bears to the aggregate value of the subject insured."

If the policy were reformed to cover the goods in the frame building destroyed by fire or a direct recovery therefor allowed, such recovery would be permitted only under a policy carrying a rider putting into effect as against the plaintiff the terms of the "distribution average clause." North River Insurance Co. v. Corsicana Warehouse Co. (Tex. Civ. App.) 281 S. W. 217. It would be presumed that the usual, ordinary and lawful policy under the circumstances was in contemplation of the parties. Commercial Union Assurance Co. v. Preston (Tex. Civ. App.) 238 S. W. 326.

In order to apply the "distribution average clause," it would be necessary to know the value of the goods in each of the buildings. The evidence is that the goods in the tile building were of much greater value than the goods destroyed. Since plaintiff did not prove the value of the goods in the tile building, there is no basis for determining or ascertaining a correct proportional judgment.

There are other assignments presented, but this disposes of the controlling propositions. The facts, especially those relating to the plaintiff's compliance with the record warranty clause, have been fully developed, and for the reasons assigned the judgment of the trial court is reversed and judgment is here rendered in favor of the appellant, or defendant below.