WEIR et al. v. W. T. CARTER & BRO. et al. (No. 6633.)

(Court of Civil Appeals of Texas. Galveston. June 11, 1914. Rehearing Denied Oct. 15, 1914.)

1. JUDGMENT (§ 461*)—EQUITABLE RELIEF—PAROL EVIDENCE—ADMISSIBILITY.

The parol evidence rule does not apply where a written instrument is attacked on the ground of fraud or mistake; hence, in a suit to correct the entry of a judgment by agreement, parol evidence is admissible to show that the

judgment entered did not, because of mistake, comply with the agreement.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 892, 893, 895; Dec. Dig. § 461.*]

2. JUDGMENT (§ 427*)—CORRECTION.

Where, through mistake, the judgment entered was not prepared in accordance with the agreement for rendition of a judgment, and plaintiffs were not guilty of any negligence in failing to discover the error, they are entitled, in subsequent proceedings, to have the judgment corrected.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 805–807; Dec. Dig. § 427.*]

Appeal from District Court, Polk County; L. B. Hightower, Judge.

Suit by W. T. Carter & Bro. and others against H. P. Weir and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Baldwin & Baldwin, of Houston, and W. D. Gordon and Thos. J. Baten, both of Beaumont, for appellants. J. C. Feagin and Hill & Hill, all of Livingston, and Baker, Botts, Parker & Garwood, of Houston, for appellees.

PLEASANTS, C. J. This suit was brought by the appellees against appellants to correct the entry of a judgment by agreement rendered by the district court of Polk county on December 4, 1911, in cause No. 4055 on the docket of said court, styled Annie T. Lomax v. Wm. Carlisle & Co. et al. This suit No. 4055, brought in the name of Annie T. Lomax, was an action of trespass to try title to six several tracts of land of 160 acres each, situated on the J. D. Nash league in Polk county. The defendants in said suit were Wm. Carlisle and George Pennell, composing the firm of Wm. Carlisle & Co., W. T. Carter, E. A. Carter, and Jack Thomas, composing the firm of W. T. Carter & Bro., and H. P. Weir. The defendants Wm. Carlisle & Co. by appropriate pleadings in said suit claimed title to all of the Nash league against all of the other parties to said suit. The defendants W. T. Carter & Bro. claimed title to two segregated tracts, one of 85 and the other of 119 acres on the Nash league, and also an undivided interest of 300 acres in said league. They further alleged ownership of an adjoining survey of 640 acres, known as International & Great Northern Railway Company survey, and disclaimed title to all of the land claimed by plaintiffs and their codefendants, except the tracts on the Nash survey above mentioned, and such portions of the land claimed by plaintiffs and defendants Carlisle & Co. and H. P. Weir as might be in conflict with said International & Great Northern Railway Company 640-acre survey.

The defendant H. P. Weir by his answer set up claim to all of the Nash league, except an undivided 1,200 acres admitted to be owned by defendants Carlisle & Co., and the interests claimed by defendants W. T. Carter & Bro. He further averred that the defendants Carter & Bro., under their claim as

to the location of the boundary line of the International & Great Northern Railway Company survey, had ejected him from a portion of his land, and prayed that the true boundary line of said Nash league be established. Sam Griffin and C. Bailey intervened in the suit, claiming vendor's liens, respectively, upon two of the 160-acre tracts claimed by plaintiff Annie Lomax. This suit, though brought in the name of Annie T. Lomax, was in fact a suit by Jacob C. Baldwin, who had purchased the six 160-acre tracts from parties claiming under the statute of limitations. The defendant H. P. Weir was represented in said suit by W. D. Gordon, who also had an interest in the suit by purchase from Weir. On June 15, 1910, the West Lumber Company intervened in said suit, setting up that, after the institution of the suit, they had purchased the interest of defendants Carlisle & Co., and asking judgment against all parties for said interest.

From this statement of the pleadings in the suit of Annie T. Lomax v. Wm. Carlisle & Co., it is apparent that one of the issues in said suit was the location of the boundary line between the Nash league and the International & Great Northern Railway Company survey. This disputed boundary line was the west line of the Nash league. The original English field notes from the archives of the General Land Office describe said survey as follows:

"On Big Sandy or Village creek, beginning at a double beach at a famous Indian camp on the west side of Big Sandy and at a trace leading from Menard's creek at the crossing of the road from Liberty to Nacogdoches, from which beach a white oak 12 in. dia. brs. S. 78 E. 6½ vrs. dist. also a beach 12 in. dia. brs. N. 7 E. 5 vrs. dist. Thence N. 70 E. 600 vrs. Big Sandy 15 vrs. wide, course south 1,970 vrs. pine 16 in. dia., line tree 3,100 vrs. mound 2nd corner from which a black oak 11 in. brs. N. 87 W. 4.7 vrs. dist. also a pine 9 in. dia. brs. S. 17 E. 3 vrs. dist. All kinds of oak, ash, hickory and some pine undergrowth, peach, dogwood and cane, land rich. Thence S. 20 W. 961 vrs. spring branch 1.5 varas wide, course S. 80 W. 1,770 varas black oak 9 in. dia. line tree 350 varas small spring branch 4,800 varas Big Sandy 16 varas wide, course S. 70 E. 6,- 500 varas small ash 1.5 in. di. 3rd. corner, from which a beach 15 in. di. brs. 59½ W. 9.5 varas dist. also a black oak 26 in. di. bears S. 70 E. 6 varas dist. oak, ash, hickory and some pine undergrowth, peach, dogwood and cane, land rich but appearance of overflow on the first bottom. Thence S. 70 W. 5,000 varas to 4th corner in the bottom and directly on the east bank of Menard's creek from which a black oak 20 in. di. bears S. 37 W. 2.7 varas dist. also a black oak 16 in. di. bears N. 53 E. 9 varas dist., oak, ash, hickory and pine timber, land fertile. Thence N. 20 E. 6,500 varas to the 5th corner, timber and land the same. Thence N. 70 E. on random line 1,898.5 to the place of beginning, fell 3.4 varas southerly of the corner. Thence on true line S. 70 W. 1,898.5 to the 5th corner, containing one league about 13 labors of farming land."

The field notes, as translated from the original Spanish grant, are as follows:

"From a double beach tree which is found near to an Indian town to the west of Big Sandy creek at the point where the road from Menard creek crosses the road from Nacogdoches to Liberty, from which a white oak 12 inches in diameter is to the south 78 east at the distance of 6.5 varas and a beach of 12 inches in diameter is to the north 7 east at the distance of 5 varas. From thence to the north 70 east there was measured 3,100 varas, and the second corner was raised formed by a mound or stake from which a black oak of 11 inches in diameter is to the north 78 at the distance of 4.7 varas and a pine 9 inches in diameter is to the south 17 east at the distance of 3 varas. From thence to the south 20 west there was measured 6,500 varas to an ash 1.5 inches in diameter, which is the third corner from which a beach 15 inches in diameter is to the north 59½ west at the distance of 9.5 varas and a black oak of 26 inches in diameter is to the south 70 east at the distance of 6 varas. From thence to the south 70 west there was measured 5,000 varas and the fourth corner was raised from which a black oak of 20 inches in diameter is to the south 37 west at the distance of 2.7 and another black oak of 16 inches in diameter is to the north 53 east at the distance of 9 varas. From thence to the north 20 east there was measured 6,500 varas and the fifth corner was raised, from thence to the north 70 east there was measured 1,898.5 varas to the first corner."

Prior to the time the suit of Lomax v. Carlisle was instituted, there had been two surveys made of the Nash league, one known as the A. B. Garvey survey, which located the southwest corner of the Nash league on the east bank of Menard creek, as called for in the original English field notes, and ran said line north 20 east from such corner. The other survey, known as the Wilcoxen & Hubert, placed the southwest corner and the west line of the Nash some distance further east than placed by the Garvey. The southeast corner of the Nash league, as now known and recognized, is only 4,480 east of Menard creek, and if the south line of the league is run from said recognized southeast corner, the 5,000 varas distance called for in the field notes, the west line of the league would be placed 520 varas west of Menard creek. In the Lomax-Carlisle suit Carter & Bro. were claiming the line as fixed by the Wilcoxen & Hubert survey, and appellant H. P. Weir claimed the line 5,000 varas west of the southeast corner of the league, as called for in the field notes. The issues raised by the pleadings and the contentions of the parties in said suit being as shown by the foregoing statement, a judgment was entered in said suit on December 4, 1911, which upon its face appears to be a judgment upon a hearing of the evidence, but which the undisputed evidence shows was entered by agreement of the parties. This judgment, after decreeing that the plaintiff Lomax and the interveners Bailey and Griffin take nothing, proceeds to fix the location of the boundary lines of the Nash league, and adjudges to the other parties to the suit the several tracts and undivided interests claimed by them, respectively, in said league. As fixed in said decree, the boundaries of the Nash are as follows:

"Beginning on the north boundary line of the H. W. Augustine headright league at a point 257 varas west of Big Sandy creek for the southeast corner of this survey. Thence south 70 west 5,000 varas to a stake for corner (bearing trees as called for in the original field notes). Thence north 20 east 6,500 varas to a stake for corner. Thence north 70 east intersecting the L. T. Hampton line at 920 varas 5,000 varas to a stake for corner. Thence south 20 west 6,500 varas to the place of beginning."

The plaintiffs in this suit are W. T. Carter & Bro. and West Lumber Company, and the defendants are H. P. Weir, Annie T. Lomax, Sam Griffin, and C. Bailey, and, as before stated, the purpose of the suit is to correct the above judgment entry describing and locating the boundaries of the Nash league. After alleging the facts in regard to the issues involved in the Lomax-Carlisle suit and the compromise and settlement of said suit by agreement, plaintiffs' petition contains the following allegations:

"Plaintiffs further show to the court: That the firm, positive, and unambiguous agreement with reference to the compromise of the issues involved in said cause of action was that the south boundary line of the John D. Nash league should extend from the beginning at the southeast corner south 70 west 4,480 varas along the Garvey line and to the corner established by Garvey on the east bank of Menard's creek, said creek being a large, well-known stream of water, the location of which was well known to all of the parties to said suit. That the southeast corner of said Nash league of land is described in the original field notes as follows: 'Thence S. 70 west 5,000 varas to the 4th corner in the bottom and directly on the east bank of Menard's creek, from which a black oak 20 in. di. bears S. 37 W. 2.7 varas dist.; also a black oak 16 in. di. bears N. 53 E. 9 vrs. dist., oak, ash, hickory and pine timber, land fertile.' That having reached this agreement, the preparation of the decree in this case was intrusted to W. D. Gordon, attorney for H. P. Weir, and that said decree, as entered in said cause and hereinbefore copied, was prepared by said W. D. Gordon. Plaintiffs further show that the description which the said W. D. Gordon incorporated in said decree entered in cause No. 4055 incorrectly described the said John D. Nash league in this: That the south line is called to extend 5,000 varas south 70 west from the beginning corner described in said judgment, and the north line is described as being 5,000 varas in length, when in truth and in fact the beginning corner, as described in said judgment, along the south line to the southwest corner as fixed by the bearing trees, the description in the original grant and field notes stops at a point 4,480 varas distant from the beginning point, and that the north line corresponds in its true distance with the south line, as last above described. That there is a conflict in the description of said Nash league, as contained in said judgment, between the call for the distance of 5,000 varas and the call for the bearing trees and natural objects referred to in said decree, which as shown in the original grant are located on the east bank of Menard's creek. That, as shown in said original field notes and grant, the southwest corner of the Nash league is located on the east bank of said stream, and that, to prolong the south line of said Nash league, 5,000 varas would extend it across Menard creek, which is a large stream, and well-defined natural object, a distance of 520 varas. That the true agreement, as made between the parties, was that said south and north lines should be 4,480 varas in length, and that the southwest corner should

be fixed and established on the east bank of Menard's creek, as called for in the original field notes archived in the General Land Office, and as shown in the grant to said league. That the description of said Nash league, as contained in said decree in cause No. 4055 in the district court of Polk county, is the result of a mutual mistake, on the part of the parties to said decree, in describing the north and south lines as 5,000 varas in length, when it was intended by all parties that the length of said lines should be 4,480 varas, corresponding with the natural objects located on the ground and called for in said decree and in the original grant and field notes of the John D. Nash league, and this action is brought for the purpose of curing this mistake and making the distance called for in said decree correspond and conform to the natural and artificial objects found on the ground called for and referred to in said decree, as shown by the said original field notes and grant."

The petition further alleges in substance that, if the failure to describe the Nash league in said decree in accordance with said agreement and locate the west line thereof as located by the Garvey survey was not the result of a mutual mistake, the call in said description in said decree giving the length of the south line as 5,000 varas was fraudulently inserted for the purpose of depriving plaintiffs of land to which they are justly entitled. Then follow the following allegations: ·

"That said decree was prepared late on the afternoon of the day when the parties and attorneys were trying to dispose of said cause to enable the parties and attorneys to return to their respective homes. That, when the said decree had been prepared by the said Gordon, he stated expressly that the same correctly described the said Nash league of land in accordance with the agreement of settlement which had been reached, viz., that said description was according to the survey made by A. B. Garvey, which was the basis of the agreement. That, in examining the decree which the said Gordon had prepared, counsel for the parties herein expressly asked the said Gordon whether or not he had described the boundary lines of said league according to the Garvey survey and location of same, which was the basis of said agreement. That upon the assurance of said Gordon that such was the case, and relying upon this statement, he at that time, acting for the defendants herein named, and especially for the said H. P. Weir, counsel for plaintiffs herein, on account of the fact that it was late in the afternoon, and the time for the adjournment of court almost at hand, and the desire of the parties and their attorneys to have said decree entered by the court on that date, did not read that portion of the decree describing the Nash league, but read the portion of the decree describing the different tracts of land by metes and bounds which were adjudged to the plaintiffs herein. That it was not known to the plaintiffs herein or their counsel that said Gordon had inserted the call for a distance of 5,000 varas from the southeast to the southwest corner of said Nash league and from the northwest to the northeast corner of said league, until after the adjournment of the term of court at which said decree was entered, and, promptly after the discovery was made, this suit was filed seeking relief."

The defendants answered by general demurrer and by special exception, the nature of which it is unnecessary to state. The answer further avers that the description of the Nash league in said decree was in accordance

with the agreement under which said decree was drawn, and that said decree was examined and approved by the attorneys representing Carter & Bro. before same was entered. The allegations of mutual mistake and fraud, contained in plaintiffs' petition, are expressly denied. The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiffs.

The cause was submitted to the jury upon special issues. The first issue, being whether the verbal agreement of the parties ·upon which the judgment was prepared and entered in the Lomax-Carlisle suit, was that the Garvey survey should be adopted in fixing the boundaries of the Nash league, and the second whether the failure to prepare said judgment in conformity with said agreement was the result of mutual mistake. The verdict answered both these questions in·the affirmative. The issue of fraud was also submitted in event the jury found there was no mutual mistake. Having found for the plaintiffs on the issue of mutual mistake, there was, in accordance with the instructions of the court, no express finding upon the issue of fraud. The finding that the agreement was as alleged by plaintiffs is sustained by the great preponderance of the evidence. The undisputed evidence shows that W. D. Gordon, who was the attorney for Weir in said suit, prepared the decree. C. L. Carter, who was the attorney for Carter & Bro. in the suit, testified that he did not read that portion of the decree fixing the location of the Nash survey, but relied upon the statement of Mr. Gordon that the location of said league was fixed by said decree in accordance with the agreement. This statement of Mr. Carter was not denied by Mr. Gordon. He did deny, however, that he had agreed to adopt the Garvey survey in fixing the location of the Nash league.

[1] Appellants' first assignment of error complains of the refusal of the court to sustain defendants' objection to the parol evidence offered by plaintiffs to show the agreement upon which the judgment was prepared. The ground of the objection was that, all prior agreements having been merged in the judgment, it was not competent to prove a different agreement from that expressed by the judgment. The rule invoked by this objection has no application when the written instrument is attacked on the ground of fraud or mistake. Whenever, as a result of mutual mistake or fraud, a written instrument fails to express the agreement of the parties, parol evidence is admissible to show what the agreement was. If this was not the rule, the reformation or correction of a written instrument could rarely, if ever, be accomplished. This proposition is too elementary to require the citation of authorities. There is no merit in appellants' contention that the allegations of mistake and fraud in the preparation and entry of the judgment contained in the petition are insufficient to

entitle plaintiffs to show by parol that the agreement was different from that expressed in the judgment. It is true that the judgment, as prepared and entered, was approved and signed by the attorney for plaintiffs, but he did this without reading it and relying upon the representations of Mr. Gordon that it was prepared in accordance with the agreement. It cannot be held in these circumstances that his signing the approval of the judgment was such negligence that he cannot be heard to complain of the mistake or fraud in its preparation. It is well settled that a party to an agreement, who induces another to sign it by misrepresenting its contents, will not be heard to say that the party so signing was negligent in not reading the contract, and is therefore bound by its terms. San Antonio National Bank v. McLane, 96 Tex. 48, 70 S. W. 201; Kelley v. Ward, 94 Tex. 289, 60 S. W. 311; Ins. Co. v. Brannon, 99 Tex. 396, 89 S. W. 1057, 2 L. R. A. (N. S.) 548, 13 Ann. Cas. 1020.

It would serve no useful purpose to discuss appellants' several assignments of error in detail.

[2] The jury having found that the judgment entered was not prepared in accordance with the agreement, and this finding being supported by the great weight and preponderance of the evidence, and plaintiffs' attorney not being chargeable with negligence in permitting the entry of such erroneous judgment, plaintiffs are clearly entitled to have the judgment corrected and made to conform to the agreement. If the misdescription in the judgment as entered was not caused by a mistake of the draughtsman, it must have been fraudulently inserted, and it is immaterial, in so far as plaintiffs' rights are concerned, whether such false description was mistakenly or fraudulently inserted in the judgment.

None of appellants' assignments presents any error which would authorize a reversal of the judgment, and each of them is overruled. It follows that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.