## SABINE HARDWOOD CO. v. WEST LUMBER CO. et al.

(District Court, E. D. Texas. December 11, 1916.)

1. COURTS ⟨⟩509—JURISDICTION—FEDERAL AND STATE COURTS.

·The federal District Court has no appellate jurisdiction over a state District Court, and must respect a decree entered by the latter court within its jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1364–1371; Dec. Dig. ⟨⟩509.]

2. VENDOR AND PURCHASER ⟨⟩227, 229(6, 7)—ENTRY OF JUDGMENT—MISTAKE—NOTICE.

The attorney for a party in a suit to determine the title to land, in which a judgment by agreement was rendered, but the entry thereof by mistake misstated the length of one of the boundaries, as a matter of fact as well as by legal presumption, had notice of the mistake, and purchased the land from his client subject to the right of the other party to have a judgment entry corrected.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 474, 487; Dec. Dig. ⟨⟩227, 229(6, 7).]

3. JUDGMENT ⟨⟩306—ENTRY—CORRECTION—MISTAKE.

The entry of a judgment is a ministerial act of the clerk, and cannot affect the judgment as rendered by the court, which is a judicial act, and therefore Rev. St. Tex. 1911, art. 7758, providing that any final judgment rendered in any action for the recovery of real estate should be conclusive as to title or right of possession, and does not prevent the correction of a mutual mistake in the entry of the judgment, whereby the land was described differently than in the judgment as rendered.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 598; Dec. Dig. ⟨⟩306.]

In Equity. Suit for partition by the Sabine Hardwood Company against the West Lumber Company and others. Decree entered, determining a disputed boundary adversely to plaintiff's claim.

W. D. Gordon and Thos. J. Baten, both of Beaumont, Tex., for complainant.

Orgain, Butler & Bolinger, of Beaumont, Tex., and Baker, Botts, Parker & Garwood, of Houston, Tex., for defendants.

RUSSELL, District Judge. This controversy originally arose in the state court, and involved the title to the J. D. Nash survey of land. The plaintiff in that suit was Annie T. Lomax, and one of the defendants was H. P. Weir, through whom the plaintiff in this suit, Sabine Hardwood Company, claims. One of the controversies between the parties to the suit in the state court was the length of the lines of the Nash league, one of the parties contending that the south lines should be 5,000 varas in length, and the other party contending that those lines should be only 4,480 varas in length. To state this matter differently, one of those parties contended that the southwest corner of the Nash was on the east bank of Menard creek, and the defendant H. P. Weir contended that that corner should be 520 varas west of Menard creek. · The parties to the state court suit finally agreed upon a judgment by which what was known as the Garvey survey of the Nash

was adopted, and was agreed to be made the judgment of the court. The Garvey survey fixed the southwest corner of the Nash on the east bank of Menard creek, and fixed the length of the south lines at 4,480 varas. H. P. Weir was a party to that suit, and W. D. Gordon was his attorney at the trial, and the agreement I have mentioned was executed by W. D. Gordon, as the attorney for H. P. Weir. The state district court of Polk county adopted the agreement of the parties, and thereupon, on December 4, 1911, rendered a judgment, which, among other things, fixed the southwest corner of the Nash on the east bank of Menard creek and established the length of the south lines at 4,480 varas. W. D. Gordon not only executed the agreement above referred to as the attorney for his client, H. P. Weir, but Mr. Gordon was present at the rendition of the judgment and had knowledge of its terms.

In the entry of the judgment the south lines of the Nash were, by mistake, stated to be 5,000 varas instead of 4,480 varas, as agreed upon and as actually established by the court in the judgment of December 4, 1911. In May, 1912, the defendants affected by the judgment of December 4, 1911, discovered the mistake in the judgment entry, and at once brought a proceeding to correct it. At the time this proceeding to correct the judgment entry was brought the plaintiff here, Sabine Hardwood Company, had not acquired title to the land, and when the defendants brought that suit to correct the judgment entry, they filed a lis pendens, under the Texas statute, and the Sabine Hardwood Company acquired the land with such notice as the lis pendens statute visited upon it.

In the trial of this proceeding to correct the judgment entry the state court rendered a judgment, finding that the judgment rendered by the court, on December 4, 1911, fixed the southwest corner of the Nash on the east bank of Menard creek, and established the length of the south lines at 4,480 varas. The court further found that by a mutual mistake of the parties the length of those lines was misstated to be 5,000 varas, and the court thereupon ordered the judgment entry to be corrected so as to conform to the judgment actually rendered as above stated. H. P. Weir, through whom the Sabine Hardwood Company claims, was a party to that proceeding, and appealed from this last described decree of the state court, and the said decree was affirmed by the Texas court of Civil Appeals. See Weir v. W. T. Carter & Bro., 169 S. W. 1113.

[1] Now, this court is not vested with appellate jurisdiction over the state district court of Polk county. That tribunal was a court of competent jurisdiction to render the decree referred to, and that decree must be respected here. The judgment of the state court established the facts as above set out.

The day after the rendition of the judgment of December 4, 1911, in the state court, W. D. Gordon purchased the interest of his client, H. P. Weir, in the land in controversy, and received from him a conveyance in writing. That instrument, according to its terms, assigned and transferred to W. D. Gordon all the estate and interest which H. P. Weir had in the Nash survey, and then proceeded to recite that,

at some future day, Weir would make such further conveyance as might be necessary. The conveyance to Gordon from Weir makes no attempt to describe the land. I call attention to the fact that this instrument only conveys the interest and estate which Weir had in the land, and that that interest, as fixed by the judgment rendered in the state court, was the interest which Weir had in the land with the south lines of the Nash established as being 4,480 varas long. The conveyance from Weir to Gordon was executed on December 5, 1911, more than five months before the proceeding to correct the judgment entry was filed.

H. P. Weir was made a party to the proceeding to correct the judgment entry, but W. D. Gordon was not made a party. However, he was present at the trial of that proceeding, and conducted the examination of the witnesses and participated in the argument of the case. There is a sharp controversy here as to whether Gordon appeared at that trial as amicus curiæ, or as one of the defendants, and much evidence has been submitted on this issue. I find it unnecessary to decide the question of the capacity in which he appeared, because I am of opinion that another legal principle, which is not at all in dispute, is determinative of his rights.

[2] Gordon was the attorney for Weir in the original suit in the state court, in which the judgment was rendered on December 4, 1911. Gordon, on behalf of Weir and as his attorney, executed the agreement on which that judgment was based. He, both as a matter of fact as well as by legal presumption, had full knowledge that in the judgment entry there was a mistake, in stating the south lines of the Nash at 5,000 varas, and that the judgment actually rendered fixed the length of those lines at 4,480 varas. Therefore, when he took the conveyance of the interest and estate which Weir had in the land, he took it subject to the right of the parties at interest to have that judgment entry corrected so as to conform to the judgment actually rendered. Of course, the Sabine Hardwood Company, bought with notice, because it purchased after the lis pendens notice had been properly filed.

[3] The second proceeding in the state court was not a proceeding to reform a judgment, but to correct a judgment entry. An inspection of the pleadings in that case shows this to be the fact, and the Texas court of Civil Appeals took this view of the case. In the opening statement of the case by Judge Pleasants he says:

"This suit was brought by the appellees against appellants to correct the entry of a judgment by agreement rendered by the district court of Polk county on December 4, 1911, in cause No. 4055 on the docket of said court, styled Annie T. Lomax v. William Carlisle & Co. et al."

The decision which I will make in this case is based upon the distinction which must be drawn between a judgment entry and the judgment rendered. Ordinarily the judgment rendered and the judgment entry correspond, but they do not necessarily correspond, and they may widely differ. Where such differences do exist the judgment actually rendered must prevail over the judgment entry, because the former

is the judicial finding of the court, while the latter is but the ministerial act of the clerk.

Mr. Gordon has ·called my attention to article 7758 of the Revised Statutes of Texas, having reference to the conclusive effect of judgments in cases of trespass to try title. The language is:

"Any final judgment rendered in any action for the recovery of real estate hereafter commenced shall be conclusive as to the title or right of possession established in such action upon the party against whom it is recovered," etc.

This statute, by its terms, relates to judgments rendered, and certainly cannot be invoked in favor of one who is claiming under a judgment entry made by mutual mistake and incorrect, and who took his title with knowledge that the judgment entry did not express the judgment actually rendered by the court.

I have made a hasty examination of some of the authorities to show that there is a distinction to be observed by the courts between the entry of a judgment and the judgment rendered. I have had occasion to consult "Black on Judgments," and I find the same question discussed in Cyc., and therefore I read one or two excerpts from the 23d Vol. of Cyc. because the same propositions are stated with more terseness and with equal clearness. At page 835, this language is used:

"The rendition of a judgment is the judicial act of the court in pronouncing the sentence of the law upon the facts in controversy as ascertained by the pleadings and verdict. The entry of a judgment is a ministerial act, which consists in spreading it upon the record or writing it at large in a docket or other official book. As between the parties a judgment duly rendered is valid and effective, although not entered; that is, the neglect or failure of the clerk to make a proper entry of the judgment, or his defective or inaccurate entry of it, will not deprive it of the force of a judicial decision. Still a judgment is not complete and perfect for all purposes until it has been duly entered. Thus, until entered, it cannot create a lien upon the land of the debtor such as to affect third parties or support a claim of res judicata or former adjudication. As it is the duty of clerks of courts to enter the judgments of the courts, it will be presumed, in aid of a judgment, that this duty was performed, when the dockets or records have been lost or destroyed, especially after the lapse of a considerable period of time."

Now, on page 866 I find this language:

"An amendment or correction may be allowed at any time, where the judgment as entered does not correspond with the judgment as actually rendered, or with the intention and understanding of the court in regard to its form or terms. The power of amendment may be employed to strike out surplusage or matter improperly included in the judgment, to correct wrong recitals, to change the form of the judgment to make it correspond with the facts of its rendition; and it may be employed to relieve the judgment of ambiguity, or to make it conform to the verdict, where by mistake it has been entered in terms different therefrom. And so the court may amend its record by transferring the proceedings to the proper suit when by mistake they have been filed in a suit to which they do not belong."

I read again from page 874:

"If, in consequence of a clerical error or miscalculation on the part of the clerk of the court, the amount of the recovery in a judgment is stated at a wrong sum, the entry may be amended to conform to the truth. So an amendment may be made where the amount of the judgment is in excess of that claimed by the plaintiff in his pleadings, or greater than the sum found by

the verdict or ordered by the court, or larger than the amount which limits the jurisdiction of the court, or excessive in consequence of the failure to allow proper credits, although not where the excess of the judgment is due to an error of law, as where it is greater than the evidence will support, unless in that case plaintiff remits the excess."

On page 883 I find this language:

"The amendment or correction of a judgment relates back to the original judgment and becomes a part of it and makes the judgment of the same effect as if the defects or mistakes on account of which it was amended had never existed. But it does not make a new judgment or confer any new or additional rights. Where a party applies for and obtains an amendment of the judgment, he thereby waives all erroneous rulings of the court preceding the judgment. An amendment of the judgment will not be allowed to prejudice the rights of third persons, such as subsequent judgment creditors, purchasers, or mortgagees, who have acquired interests of value, unless they have taken with notice, or where the amendment is made at the same term at which the judgment was rendered. The order allowing an amendment should contain a saving of the intervening rights of third persons, but the law will make this reservation whether it is expressed or not."

The question for me to consider is, Was this proceeding an effort to correct an error of law in the original judgment, or was it an effort to correct the judgment entry. The parties in the whole of this litigation have viewed it, and considered it, and acted upon it, as a matter in which it was attempted to correct the judgment entry; and the Court of Civil Appeals, in passing upon the question in the first paragraph of the opinion, declared that the purpose of the suit was not to correct the judgment, but to correct the judgment entry. It is true as a matter of fact that in 95 per cent. of the cases brought in courts of record that the clerk is the man who enters the judgments and is responsible for their entry. But if he makes a mistake in the entry, can it be said that the judicial act of the court can be controlled by the ministerial act and mistake of the clerk? Certainly not! Take the judgment entered in the state court on the 8th day of July, 1913. The charge of the court submitted this case upon special issues, and the jury, after hearing the argument of counsel thereon, retired in charge of the proper officer and thereafter on, to wit, the 8th day of July, 1913, returned into court a verdict upon the special issues as follows:

"Question No. 1. Did or did not the parties in that conference preceding the writing of the decree in the case of Annie T. Lomax v. William Carlisle & Co. et al. verbally agree to adopt the Garvey line as the boundary in the settlement of that suit? Let your answer to this question be that they did or did not."

The jury answered that question by writing their answer at the bottom of the question saying, "They did." There is no pretense but that it was a judgment by agreement. There is not a scintilla of controversy in the testimony but that it was a judgment by agreement. In my view of the law I am bound by that judgment. The jury found that the parties agreed verbally to adopt the Garvey lines as the boundary lines of the Nash league. I say I am bound by it because the jury found it and the court entered a judgment on it which was appealed and affirmed and a writ of error refused. The next issue submitted

to the jury was whether or not the failure of the parties in the preparation of the decree in the case of Annie T. Lomax v. William Carlisle et al. to insert the description of the Nash survey as surveyed by A. B. Garvey was the result of a mutual mistake, and the jury answered that it was a mutual mistake.

The situation was that on December 4, 1911, these parties agreed that the Garvey lines should be descriptive of the Nash league, and upon that the court rendered a judgment that the Garvey lines should be the description of the Nash league, and in the entry of that judgment which the court rendered the parties made a mutual mistake by which the line in question was stated to be 5,000 varas when it should have been 4,480 varas. The court, having held that to be the agreement, proceeded to correct the entry of the judgment. At the time the original decree was rendered on December 4, 1911, Mr. Gordon did not own any of the Nash league, but the proof shows beyond controversy that he was present when the judgment was rendered, participated as the attorney for Weir at that trial, and under every presumption of law and fact must be held to have known that it was rendered for the proper figure, though entered for one different in amount by mutual mistake. Therefore when he took as purchaser he took with notice, and was bound by the judgment as rendered, and must stand by the entry as corrected. There is no question but that plaintiff had notice be-· cause it bought from Mr. Gordon after the proceeding was filed. I, therefore, find that I am bound by the judgment as rendered on December 4, 1911, and incorrectly entered on that date and afterwards perfected by a correct entry on July 8, 1913. I direct the entry of the decree in this case according to these views.

---

⊛=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes