106   480
d125  709

## BALDWIN FERTILIZER COMPANY *v.* THOMPSON & McALISTER.

1. One who deals with a special agent is chargeable with notice of the extent of the latter's authority; and if such agent makes a settlement not within the scope of his agency, the settlement is not binding upon the principal.
2. A principal who in law is entitled to the possession and control of personal property is not bound by an unauthorized agreement of an agent by which the principal obtains the possession thereof, nor will the principal, merely by retaining possession of such property after receiving the same from the agent, be charged with a ratification of the act of the agent. This is so because it is the right of the principal, either with or without such an agreement, to hold and possess the property.

Argued November 18, 1898. — Decided February 11, 1899.

Complaint. Before F. H. Burch, judge pro hac vice. Dodge superior court. March term, 1898.

Thompson & McAlister bought fertilizers from the Baldwin Fertilizer Company, for which they gave their promissory note;

and sold a part of the fertilizers to farmers whose notes they took for the same, payable to the company. In September,, 1891, the notes thus taken by them and so much of the fertilizers as remained unsold were turned over by them to the company through one Bostwick, a salesman of the company. Subsequently the company brought suit for a balance alleged to be due upon the note of Thompson & McAlister, who set up in defense that the farmers' notes and the fertilizers turned over to the plaintiff were delivered to it under an agreement between its agent, Bostwick, and the defendants, that the same were to be accepted in full settlement of the amount due the plaintiff. The plaintiff contended that Bostwick had no authority to make such a settlement, and that it received and held the notes merely as collateral security, in pursuance of the contract under which the fertilizers were sold to the defendants. This contract was in writing, signed by the parties, dated in January, 1891, and, after providing for the giving of promissory notes by the defendants for the fertilizers purchased by them, provided further as follows: "To secure the payment of said indebtedness, the said parties of the second part [Thompson & McAlister] agree, on or before the 1st day of May next, to pay or cause to be paid to the said Baldwin Fertilizer Company all notes given for the purchase of same, as collateral security for the payment of the note of [the party of] the second part hereinbefore mentioned. It is further agreed by said Baldwin Fertilizer Company that it will, on or about September 1st, 1891, return to the said parties of the second part the said notes taken as collateral, for collection; and the said parties of the second part agree in that event to collect the notes as the agent of the Baldwin Fertilizer Company, and to hold all such collections in trust for its account until the notes of the said parties of the second part held by the Baldwin Fertilizer Company have been paid in full. When the indebtedness of the said parties of the second part is paid, all notes, collaterals, and evidences of debt are then to become the property of the parties of the second part. Said parties of the second part agree to hold in trust for Baldwin Fertilizer Company, as its property and subject to delivery to it or its order, all said fertilizers which may be unsold, and all cotton,

currency, accounts, and notes received from sales of above fertilizers, until the above indebtedness has been paid in full, and to promptly account to it therefor, according to the terms of this contract."

There was a verdict for the defendants. The plaintiff moved for a new trial on the grounds that the verdict was contrary to law and the evidence. The motion was overruled, and the movant excepted. Other facts are stated in the opinion.

*Roberts & Milner* and *Walter M. Clements,* for plaintiff.
*E. Herrman* and *J. H. Martin,* for defendants.

LITTLE, J.    1. The first question to be considered is, whether the plaintiff was bound by the action of its agent, Bostwick, in agreeing to accept from the defendants certain notes given for fertilizers, in payment of their debt. The law is, that the principal is only bound for the acts of his agent within the scope of his authority. Civil Code, § 3021. The evidence for defendants did not show that Bostwick had any authority to make the contract by which it was claimed their note was settled. That on the part of the plaintiff company distinctly showed that Bostwick, who was connected with it as a salesman, had no such authority, and that a written contract existed between the plaintiff company and Thompson & McAlister which fully covered the subject of the contract; and in dealing with Bostwick as the agent of the company, Thompson & McAlister did so at their own risk. If Bostwick had the authority to make such a contract, then of course the act of the agent was the act of the principal. If he did not, then the company was not bound by the contract. It seems to us that it is clearly established under the evidence that the agent exceeded his authority in making the alleged settlement with Thompson & McAlister, and that the company, the principal, was not bound by such contract. *Camp* v. *Southern Banking & Trust Co.,* 97 *Ga.* 582.

2. But it is claimed that the company after the making of the alleged contract between Bostwick and Thompson & McAlister, by retaining possession of the property which Bostwick received under the terms of that contract, ratified the same, and is therefore bound by its terms. As a proposition of law, it is

undoubtedly true that a principal may ratify the acts of an un-authorized agent, and when ratified, the principal is as much bound by the terms of the contract entered into as if at the time of its execution the agent was authorized to make the con-tract. It is also true, as a proposition of law, that the princi-pal may so conduct himself that the law will presume that he did sanction and confirm the act of the agent and adopt it as his own. These principles are invoked by the defendants in error to maintain the contract entered into between themselves and Bostwick. The contention is, that when Bostwick came to Thompson & McAlister to procure the notes they held for fertilizers sold, the latter declined to give up such notes until their own note which they had previously given to the com-pany was surrendered as paid; that the agent agreed to do this, and under that agreement received from Thompson & Mc-Alister the farmers' notes for fertilizers which he delivered to the company; that the latter retained the notes and collected the amounts due on a number of them, and by such retention and collection the company ratified the act of Bostwick in mak-ing the contract, and adopted the terms of such contract as its own; hence, if Bostwick had no original authority, the com-pany ratified his contract and is bound by it. However this might be under a state of facts different from those which appear in the present record, we are sure that such a conclusion does not follow under the facts of this case. A written agreement executed in January, 1891, between the company and Thomp-son & McAlister, stipulated, among other things, that the com-pany, about September 1, should return to Thompson & Mc-Alister the notes taken by the latter for the sale of fertilizers to farmers, and that Thompson & McAlister were to collect these notes as the agent of the company, and hold such collec-tions in trust for the account of the company, until the note given by Thompson & McAlister to the company should be paid, and it was only when the note of Thompson & McAlister should be paid that the notes given by the farmers should become the property of the former. It was also agreed by Thompson & McAlister that they should hold these notes as the property of the Baldwin Fertilizer Company, subject to delivery to the

company or its order.  These farmers' notes were the ones which were the subject-matter of the contract between Bostwick and Thompson & McAlister, and by the terms of that contract the defendants in error allege that their original note was paid by the delivery of these notes.  This can not be true, as matter of law, notwithstanding the terms of the contract, because at the time the contract was entered into, Thompson & McAlister held the farmers' notes as the property of the company under an agreement to deliver them to the order of the company.  Therefore, when they refused to turn over the notes, it was a violation of the written agreement, and when they stipulated with Bostwick to turn them over in payment of their original note to the company, and did do so, they were but giving to the company its own property; and even if the company received the notes and knew of the agreement made between Bostwick and Thompson & McAlister, it was nevertheless entitled to hold and collect the notes without being held to a ratification of the contract made by Bostwick, because the notes without the contract were its own, and when it came into possession of its own property, there was no obligation resting on the company to return such notes to Thompson & McAlister, but it had a right under the original contract to hold and retain the same and to collect the proceeds thereof without regard to the contract made by Bostwick.  As a matter of course, the company could change the original contract and adopt the contract made by Bostwick, although unauthorized.  But the point which we decide is, that as a matter of law it did not do so by retaining the farmers' notes and collecting the proceeds thereof, without any other evidence of ratification, because such notes belonged exclusively to the Baldwin Fertilizer Company, and that company had the right and power to collect them.  It is, therefore, our opinion that the verdict was contrary to law and the evidence in the case, and that the court erred in overruling the motion for new trial.

*Judgment reversed.  All the Justices concurring.*