## STRICKEL v. BROWNFIELD STATE BANK et al. (No. 2003.)

(Court of Civil Appeals of Texas. Amarillo. March 7, 1923. Rehearing Denied March 21, 1923.)

1. Reformation of instruments ☞21—Written contract, fraudulently failing to state correctly terms of oral contract, may be reformed.

Where an oral contract has been made between two parties, and by fraud of one the other party is induced, under circumstances which excuse him from being held bound by knowledge of the contents of the writing, to sign a writing which does not correctly state the terms of the oral contract, the defrauded party may have the contract reformed, and hold the other to the terms of the oral agreement.

2. Brokers ☞76—Acceptance of sales contract held not necessarily ratification of unauthorized provision for payment to brokers of part of forfeited earnest money.

The acceptance by an owner of land of a sales contract made by brokers did not necessarily satisfy a provision therein which they incorporated without authority, whereby part of forfeited earnest money should be paid to them.

3. Brokers ☞76—Ratification of unauthorized provision in sales contract, made by brokers as to division of forfeited earnest money, held not shown.

Evidence *held* not to show a ratification in a subsequent settlement agreement of an unauthorized provision in sales contract made by brokers, whereby forfeited earnest money should be divided between them and owner.

4. Brokers ☞65(1)—Unauthorized insertion of provision in sales as to division of forfeited earnest money held not of itself disloyalty defeating right to commission.

Where brokers without authority inserted in a sales contract with a purchaser a stipulation as to the division of the forfeited earnest money between the broker and the owner of the land, such unauthorized insertion was not itself conclusive evidence of disloyalty so as to defeat the broker's right to a commission.

Appeal from District Court, Terry County; W. R. Spencer, Judge.

Action by W. T. Strickel against Brownfield State Bank and others. Judgment for defendants on a directed verdict, and plaintiff appeals. Reversed and remanded.

R. A. Sowder and Percy Spencer, both of Lubbock, for appellant.

Geo. R. Bean, of Lubbock, and Geo. W. Neill and Joe J. McGowan, both of Brownfield, for appellees.

BOYCE, J. W. T. Strickel brought this suit against the Brownfield State Bank and the J. B. King Land Company, a partnership, to recover the sum of $1,040, with interest. Plaintiff alleged, and it was shown on the

trial, that there had been deposited in the Brownfield State Bank, by one J. L. Johnson, the sum of $2,000, as "earnest money," on a contract for the sale of land by plaintiff to the said Johnson. This contract was executed by Johnson and the King Land Company, as agents for plaintiff. The particular provision of the contract with which we are concerned, reads as follows:

"If party of the second part (Johnson) refuses to accept a good title and deed and otherwise comply with this contract, then the earnest money this day placed in escrow, shall be considered as a forfeit and be delivered by the Brownfield State Bank to the said party of the first part [Strickel] as liquidated damages, save the sum of $1,040.00, which shall go to the J. B. King Land Company as their compensation in bringing about this agreement. But if this contract is consummated the earnest money shall be considered as part of the cash payment and shall be so applied by the Brownfield State Bank."

The contract was not consummated, and the bank, after notice by plaintiff not to do so, paid to the King Land Company the $1,040, the balance of the deposit was paid to the plaintiff. Plaintiff bases his claim that he, and not the King Land Company, was entitled to the $1,040 on allegations to the effect that plaintiff listed the land with the said land company for sale on 5 per cent. commission, under agreement that no commission should be paid unless the sale was actually consummated; that the King Land Company acted in bad faith toward and without authority from the plaintiff in causing the said contract executed by them with Johnson to contain the provision for the payment of $1,040 of the $2,000 deposited in escrow to the agents, as therein provided. The land company answered, and proved on the trial that plaintiff signed a written listing contract, whereby he employed the land company, as "agents, for the sale of the property," on 5 per cent. commission, such contract containing the following provision:

"Should the purchaser fail to complete his contract and forfeit earnest money, then such earnest money shall be equally divided between the J. B. King Land Company and the owner of the land."

They answered further that the contract with Johnson was an enforceable contract for the sale of the land, and that it was plaintiff's fault if the same was not consummated, and they were entitled to their commission; also that the plaintiff accepted the sales contract with Johnson, and received $960 of the deposit, and thereby became bound by and ratified the terms of the sales contract. To this pleading the plaintiff replied that, after he had entered into a verbal contract of enlistment with the land company, he was induced to sign the written enlistment contract by fraudulent concealment of the provision for division of the earnest money and on fraudulent representations that the contract was an ordinary contract of enlistment.

The evidence is conflicting as to the circumstances under which the written contract of enlistment was executed, but it is sufficient to make an issue as to whether the plaintiff, after coming to a verbal agreement for the listing of the land with the King Land Company for sale at 5 per cent. commission, was induced to sign the said writing by fraudulent concealment of the terms of the clause for division of the earnest money and false representations as to the contents of the writing, under circumstances which would excuse the plaintiff from being bound by knowledge of the contents of the writing. The sales contract was executed by the agents without plaintiff's knowledge, and he did not authorize the provision for payment of the $1,040 to them; but after the execution of said contract plaintiff was informed of its contents, and unquestionably, so far as Johnson was concerned, ratified it. He made no objections to any part of the contract until it became probable that Johnson was not going to complete the purchase when he notified the bank not to pay the money to any one but himself. There was considerable delay in closing up the purchase and some controversy between Strickel and Johnson in reference thereto. Strickel finally agreed to release Johnson on condition that Johnson "surrender all his claims against the $2,000 deposited in the Brownfield bank." Johnson wrote the bank, authorizing it to "pay over the forfeit money, $2,000, now in your hands to Mr. Strickel, and to the J. B. King Land Company, in accordance with said contract [the sales contract]." It does not appear whether Strickel had anything to do with the writing of this letter of knowledge thereof. He thereafter demanded the $2,000 and received only $960. Judgment was for the defendant on a verdict returned on peremptory instructions from the court.

[1] Where an oral contract has been made between two parties, and by fraud of one the other party is induced, under circumstances which excuse him from being held bound by knowledge of the contents of the writing, to sign a writing which does not correctly state the terms of the oral contract, the defrauded party may have the contract reformed and hold the other party to the terms of the oral agreement; and where there is no prior oral agreement, and one party fraudulently states the contents of such an instrument, which is executed as the agreement between the parties, the contract may be reformed so as to conform to the false statement of its terms. Conn v. Hagan, 93 Tex. 334, 55 S. W. 325; Ætna Insurance Co. v. Brannon, 99 Tex. 391, 89 S. W. 1057, 2 L. R. A. (N. S.) 548, 13 Ann. Cas. 1020; Pioneer Savings & Loan Co. v. Baumann (Tex. Civ. App.) 58 S. W. 49; Page on Contracts (2d Ed.) § 241. There need be no specific prayer for reformation, where

all the facts are pleaded. Ætna Insurance Co. v. Brannon, supra. So for the purposes of this appeal the rights of the parties are to be considered as if plaintiff had a brokerage contract with the King Land Company, without any provision for division of the earnest money, as provided by the written contract. The provision in the sales contract for payment of $1,040 of the earnest money to the agents was in any event unauthorized.

But the appellee contends that the plaintiff ratified the contract as a whole; that he could not accept the contract in part and reject it in part, and that by accepting it in part, in his dealings with Johnson, he became bound by all its terms, including this provision. This contention is based on a correct principle of law. But this principle, like most general rules, has its exceptions. Mechanics' & Traders' Insurance Co. v. Rion (Tenn. Ch. App.) 62 S. W. 44; Bank v. Calder, 3 Strob (S. C.) 403; Robinson v. Vorse, 52 Iowa, 207, 2 N. W. 1108; Baldwin Fertilizer Co. v. Thompson, 106 Ga. 480, 32 S. E. 591; Murphy v. Harrison Granite Co., 81 Misc. Rep. 223, 142 N. Y. Supp. 517; 2 C. J. 484, § 100; Mechem on Agency (2d Ed.) §§ 493, 439, 412. The first three cases cited are authority for the general proposition that, where an agent binds his principal by an unauthorized contract, he cannot escape personal responsibility to the principal for the breach of his duty, because the principal carries out the terms of the contract with the other party; under such circumstances there is no ratification as between the principal and agent. In the case of Baldwin Fertilizer Co. v. Thompson, supra, the unauthorized contract of the agent secured property to which the principal was already entitled, by reason of another valid contract, and it was held that an acceptance of the property was not necessarily a ratification of the unauthorized contract. In Murphy v. Harrison Granite Co., supra, the broker was not loyal to his principal's interest in a transaction in which the principal entered into a contract with a person introduced by the broker to the principal; the principal, as a matter of fact, did not know at the time of entering into the contract with the customer, of the agent's infidelity, but the court added:

"If it had, it was not bound to withdraw from the competition or to refuse to sign the contract."

It was held that the execution of the contract under the circumstances was not a "waiver of the agent's fraud." The text-book references are to the same effect. In the citation to Corpus Juris, it is said:

"The acceptance of a part of an agent's acts, in which he followed directions, is no ratification of other separable acts, in which he was disobedient to his principals' orders."

[2, 3] The provision for the payment of the $1,040 to the land company was inde-pendent of the main purpose of the contract. It affected only the rights of the plaintiff and his agents, and was a matter in which the purchaser had no interest. The plaintiff, under his theory of fraud in the execution of the listing contract, was entitled to the agent's services in this matter in accordance with the terms of the verbal enlistment, and the agents, in rendering the service, had no right to insert in the contract with Johnson a provision which changed the terms of their contract with their principal. Our conclusion is that the plaintiff, by accepting the contract with Johnson, did not necessarily ratify the provision we are considering. We are also of the opinion that the evidence does not necessarily show a ratification thereof in the subsequent settlement agreement with Johnson. Therefore the peremptory instruction cannot be sustained on the ground that plaintiff became bound by ratification of this unauthorized term of the sales contract, and, as there is no other theory on which the peremptory instruction could have been properly given, the judgment must be reversed.

In view of another trial we make the following general statement of our conclusion as to other questions that may arise upon such trial: We have been construing contracts similar to the sales contract in question as affording the seller the right of specific performance, notwithstanding the stipulation for liquidated damages. Bourland v. Huffhines (Tex. Civ. App.) 244 S. W. 847; McAdams v. Burdine (Tex. Civ. App.) 232 S. W. 343; Henderson & Grant v. Gilbert (Tex. Civ. App.) 171 S. W. 304. It is conceded that there is some confusion and conflict in the authorities, but we have thought that our position is sustained by the direct decision of the Supreme Court in the case of Moss v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847. See, also, La Prelle v. Brown (Tex. Civ. App.) 220 S. W. 151. Therefore, if the enlistment contract was the usual one, the plaintiff, even in the absence of ratification of the unauthorized provision in the sales contract, might be liable to the agents for the 5 per cent. commission, if the agent's right to compensation was not forfeited by disloyalty on their part. If the written enlistment contract be held to be valid and binding, the land company, in the absence of ratification of the unauthorized term of the sales contract, would be entitled to $1,000 of the earnest money deposited, unless their right to compensation is defeated by their alleged fraudulent dealing toward their principal; if in such latter case it should be found that the sale was not completed through the fault of the plaintiff, then the land agents would be entitled to recover the full amount of their commission.

[4] This court, in the case of Levy v. Jarrett (Tex. Civ. App.) 198 S. W. 334 (3), considered the question as to what acts of misconduct and disloyalty on the part of an

agent would forfeit his right to compensation, which he would have otherwise been entitled to receive. We refer to that case and the authorities there cited in lieu of a further discussion here. See, also, Mechem on Agency, §§ 1588, 1593. We do not agree with the appellant's contention that the insertion of the unauthorized provision in the sales contract is of itself such conclusive evidence of disloyalty as would defeat the agent's right to a commission.

Reversed and remanded.

KLETT, J., not sitting.