## ROBERTSON et al. v. DUNCAN.
### No. 7968.

Court of Civil Appeals of Texas. Austin.
May 2, 1934.

Rehearing Denied May 23, 1934.

Harris, Harris, & Sedberry, of San Angelo, for appellants.

Upton & Upton, of San Angelo, for appellee.

BLAIR, Justice.

This litigation arose as follows: On July 25, 1925, appellant Mrs. Clara Robertson, a feme sole, made written application to the United Savings & Loan Association for a loan of $3,500, on "the east 39 feet of lot 4, and all of lots 5 and 6, in Block 74, Fort Concho Addition to the City of San Angelo." The loan was approved and the deed of trust was executed by appellant on September 25, 1925. On March 1, 1931, there was a balance of $1,603.12 due on the land, and to pay this and prevent a pending foreclosure, and to pay $449.20 delinquent state, county, and city taxes against the three lots, appellant obtained a loan of $2,400 from appellee; the balance of the loan being used to pay personal indebtedness of appellant and expenses of the loan. On May 24, 1931, the United Savings & Loan Association transferred and assigned its indebtedness and deed of trust lien on the three lots in question to appellee. On March 27, 1931, appellant executed a deed of trust on the same property to appellee to secure the $2,400 note of even date, both the deed of trust and the note reciting that they were given in renewal and extension of the balance due on the United Savings & Loan Association indebtedness. The remainder of the $2,400 was used to pay $17.75 expenses of the loan, $165 to redeem appellant's two rings from a pawn broker, $100 as "brokerage" in connection with making the loan to redeem the rings, and $44 to A. L. Turner as "commission" for procuring the loan from appellee Duncan, who agreed to carry the loan for six months, it being the understanding that on or before the maturity of the loan the Farm & Home Savings & Loan Association, of which Turner was agent, would take up the loan; but it was unable to do so.

Appellant made default in the payment of the loan, and the three lots or parcels of land were advertised for sale under the power given in the deed of trust, and were sold on

the first Tuesday in January, 1932. The notice of sale recited that the property would be sold to satisfy the lien given by the deed of trust, as well as the original lien given in 1925 to the United Savings & Loan Association. Appellant had her representative and attorney to appear at the sale and bid on the property for the purpose of making it "sell in the neighborhood of what it was worth." He requested that the lots be sold separately, which was done, and he bid on each lot. Appellee became the purchaser, he being the highest bidder, paying $600 for lot 4, $650 for lot 5, and $600 for lot 6, aggregating $1,850 for the three lots or parcels of land.

Appellant filed this suit after the sale of the property by the trustee, seeking to reform both the deed of trust to the United States Savings & Loan Association, which was assigned to appellee, and the deed of trust to appellee, so as to exclude therefrom lot 6 and to set aside or cancel the trustee's deed because it included lot 6, alleging that it was included in the first deed of trust by mistake or inadvertence; that appellee agreed to make the loan on the east 39 feet of lot 4 and lot 5; and that she did not discover until November 1931, that appellee had included lot 6 in his deed of trust; that he included it by mistake, or included it fraudulently and without her consent; and that appellee had the deed of trust drawn, and assured appellant that it was drawn right and that he would not cheat her; and that she relied upon appellee to draw the deed of trust in accordance with their agreement, and did not read it because of her deficient education, and because she trusted appellee to properly draw the deed of trust.

Appellee answered by demurrer, exceptions, denial, a plea of estoppel, and by cross-action in trespass to try title by virtue of the sale and trustee's deed to him.

At the conclusion of the evidence the court instructed a verdict that appellant take nothing by her suit, and that appellee have title and possession of the lots or parcels of land in suit. Judgment was accordingly rendered; hence this appeal.

■ We have reached the conclusion that the court erred in refusing to submit, to the jury appellant's requested issue as to whether or not appellee agreed to make the loan only on the security of the east 39 feet of lot 4 and lot 5.

By instructing a verdict the court necessarily found as a matter of law that the agreement between appellant and appellee was that the deed of trust covered the three lots. Appellant testified that her verbal agreement with appellee was that the deed of trust should cover only lots 4 and 5; that she depended upon appellee to draw the deed of trust in accordance with such agreement; that she did not read the deed of trust because she would not have understood it, and because appellee represented that it was right and that he would not cheat her; that it was read to her before she signed it, but that she did not entirely understand it; that she remembered that it covered lots 4 and 5, but did not remember that it covered lot 6; and that appellee told her that the deed of trust covered lots 4 and 5, but did not tell her that the deed of trust covered lot 6. A witness for appellant, who advised her with regard to her business transactions, testified that after the loan was made appellee told him that the deed of trust only covered lots 4 and 5; and that in a conversation with appellee concerning the refinancing of the loan, appellee told him that "he had a loan on the two houses and unless she made a deed to the home place (lot 6) to me or to some other man and would move off until he refinanced it * * * he would not consider it at all." Witnesses testified that the three lots and houses thereon were worth from $4,000 to $4,500, or about $1,500 each; but that due to the depression there was no market for the property.

In the case of Conn v. Hagan, 93 Tex. 334, 55 S. W. 323, 325, where the mortgagee or his agent, in drafting the mortgage or deed of trust, included therein a description of more of mortgagor's land than it was agreed should be included, and mortgagor failed to read the instrument because she did not have her spectacles, and could not read without them, but executed the instrument in reliance upon the representations of mortgagee's agent that it included only the land agreed upon, it was held that the failure to read the mortgage, under the circumstances, was not such negligence as would deprive mortgagor of the right to have the instrument reformed. See, also, Chatham v. Jones, 69 Tex. 744, 7 S. W. 600; Parker Securities Co. v. Owen (Tex. Com. App.) 1 S.W.(2d) 271; Strickel v. Brownfield State Bank (Tex. Civ. App.) 250 S. W. 258, 259; American Freehold Land Mortgage Co. v. Pace, 23 Tex. Civ. App. 222, 56 S. W. 377.

■ It is true that the deed of trust to the United Savings & Loan Association covered lots 4, 5, and 6, and appellant admitted by pleadings and by her testimony that the loan from appellee was to take up this indebtedness; but these facts would not justify the instructed verdict in view of the testimony of

appellant that appellee agreed to take up the balance of said indebtedness, taxes, etc., and make a loan of $2,400 on the security of lots 4 and 5 alone, because taking an assignment or transfer of the former lien on all the property and the renewal and extension of the lien on lots 4 and 5, omitting therefrom lot 6 in the deed of trust, was the proper way to draw it to comply with the alleged verbal agreement between them. The positive testimony of appellant was that such was the verbal agreement between her and appellee, and that she relied upon him to draw the deed of trust in accordance with the agreement; and that she signed the instrument upon his assurance that it was right, and that he would not cheat her. Manifestly the question of whether the agreement alleged and testified to by appellant was made raised an issue for the jury. It is also clear that under the facts and circumstances surrounding the execution of the deed of trust, as testified to by appellant and her witnesses, she was not guilty of negligence as a matter of law in failing to read it before signing it; but the evidence raised an issue of fact for the jury as to whether she was negligent in failing to read the instrument.

■ Nor is the contention of appellee sustained that before appellant would be entitled to reform the deed of trust so as to exclude lot 6, she would be compelled to repay the borrowed money under the principle that he who seeks equity must do equity. The contrary was held to be the rule in Conn v. Hagan, supra, the court reasoning as follows: "According to this ruling, although the deed of trust, if prepared according to the real agreement, would not have held a lien upon the land outside of the 56x133 feet, yet Mrs. Conn must submit to the fraudulent conduct of the agent of Mrs. Hagan, and restore the $1,000 borrowed, which was not intended to be a lien upon the bulk of the land, and thus concede the only question in issue, in order to secure the empty right of reforming an instrument which would have been satisfied by the payment of the debt. What benefit could it be to Mrs. Conn to have the deed of trust reformed, so as to relieve her home place of the incumbrance, after the debt itself had been discharged, and there could be no incumbrance remaining? Equity does not require the defrauded party to surrender to the perpetrator of the fraud the substance of the controversy in order to have the instrument reformed, but requires that the concession shall extend to placing the opposing party in the position that he would have occupied if the instrument had been written according to the agreement. If the substance of the controversy must be conceded, fraud would be more secure than honesty, and would be protected by courts of equity in a most effectual way."

Appellant admitted liability for $2,250 of the $2,400 loan made to her by appellee, and that same was secured by the deed of trust lien on lots 4 and 5, but contends that the trustee's sale of these lots was void, (1) because the $100 paid appellee as "brokerage" in connection with the loan to redeem the rings was in fact interest, and therefore tainted the entire loan contract with usury; (2) because the lots were sold for an inadequate price; and (3) because the sale made under the deed of trust was for a larger amount than was properly chargeable, due to the fact that the contract was tainted with usury. Neither of these contentions is sustained.

■ Appellant would not be entitled to set aside the trustee's sale and deed as to lots 4 and 5, which were intended to be included in the deed of trust, because the loan contract may have been tainted with usury, unless appellant tendered or offered to pay the principal amount of the debt. Appellant had never at any time offered to pay the principal amount of the debt. Spann v. Sterns' Adm'rs, 18 Tex. 556; Carden v. Short (Tex. Civ. App.) 31 S. W. 246; Hood v. People's Bldg. & Saving Ass'n, 8 Tex. Civ. App. 385, 27 S. W. 1046; Hemphill v. Watson, 60 Tex. 679; 17 Tex. Jur. 46; 7 Tex. Jur. 957–961.

■ It was agreed that the sale by the trustee was fairly made; that there was not the slightest circumstance of irregularity in the trustee's sale; that appellant's agent and attorney was present at the sale, requested that the property be sold separately, and he bid on each lot, the property selling for the prices aforementioned. "This being true, the sale cannot be avoided merely because of inadequacy of price." Thornton v. Goodman (Tex. Com. App.) 216 S. W. 147, 148; Walling v. Rose (Tex. Civ. App.) 2 S.W.(2d) 352.

■ It is also settled that where a sale is made in compliance with the deed of trust, no irregularity occurring in the sale, such "a sale made under a deed in trust for a sum larger than the amount with which the property is properly chargeable is not void." W. C. Belcher Land Mortgage Co. v. Taylor (Tex. Com. App.) 212 S. W. 647, 649.

The judgment awarding title and possession of lot 6 to appellee will be reversed, and the

cause remanded, for the purpose of determining the disputed issue of whether or not it was intended to be included in the deed of trust. The judgment awarding appellee title and possession of lots 4 and 5 will be affirmed.

Reversed and remanded in part; and in part affirmed.