## LIBERTY LIFE INS. CO. v. WOODWARD.* (No. 2206.)

Court of Civil Appeals of Texas. El Paso. Dec. 6, 1928.

Rehearing Denied Jan. 3, 1929.

Otis S. Allen, of Topeka, Kan., and W. W. Hilbrant, of Dallas, for appellant.

Cantey, Hanger & McMahon, of Fort Worth (Warren Scarborough and Alfred McKnight, both of Fort Worth, of counsel), for appellee.

WALTHALL, J. On April 23, 1926, appellant insurance company issued its policy of insurance to appellee wherein it agreed to pay appellee the sum of $400 per month if and when appellee should become disabled from illness or sickness while the contract of

*Writ of error dismissed.

insurance was in effect, and so long as such disability continued, the sum of $400 per month, provided such sickness had its inception and originated more than 15 days from the date of the contract of insurance, and provided such sickness wholly and continuously disabled and prevented appellee from performing any and every duty pertaining to his occupation. The policy contract as originally written provided that appellant would pay appellee the sum of $400 per month for a period of one day or more so long as appellee by reason of such sickness was actually, necessarily, and continuously confined within the house, and likewise provided that if appellee during any such sickness should not be confined within the house, but wholly unable to attend to any and every duty pertaining to his occupation, appellant would pay to appellee a monthly indemnity of $400 per month, not exceeding, however, six months. The policy of insurance as originally written was for a period of three months, with the right of appellee to renew upon payment of premiums. Appellee paid the premiums so as to keep the insurance in effect for six months, after which he decided not to renew the policy and it expired under its terms.

It is then alleged that prior to the 1st of March, 1926, appellant's general agent and district manager, R. H. Lee, solicited appellee to renew the policy, advising him for and on behalf of the insurance company that if appellee would agree to an increase of the original premium, approximately 20 per cent., appellant would, in addition to the other covenants contained in the policy, pay appellee for nonconfining illness beginning and during the life of the policy the sum of $400 per month, the same as for confining illness, without respect to the limitation of six months as originally contained in the policy, and would place a rider in such policy to such effect. It is alleged that appellee agreed to renew the policy with such agreement, and in reliance thereupon paid appellant the increased premium; that appellee thereupon delivered the policy to appellant's agent with the understanding and agreement that appellant would place a rider on the policy carrying out the new agreement as above set out.

Thereafter the policy was delivered to appellee containing the following rider:

"Liberty Life Insurance Company
"Accident and Health Department
Topeka, Kansas.
"Special Endorsement
"Effective March 1st, 1926.
"Not valid unless countersigned by duly delegated authority.
"In consideration of the special premium recited herein, Part 5 of said Policy is hereby eliminated and cancelled and the following substituted therefor:
"Non-confining illness $400.00 per month.
"Part 5. The Company will pay for one day or more at the rate of $400.00 per month, but not exceeding six months, for disability resulting from disease, the cause of which originates more than fifteen days after the date of this policy, and which does not confine the insured continuously within doors but requires medical attention; provided said disease necessitates total disability and total loss of time.

"Subject otherwise to all conditions, agreements and limitations, the policy, except as herein specifically provided:
"Attached to and forming a part of policy No. 38201 issued by the Liberty Life Insurance Company to Mortimer Lee Woodward of Fort Worth, Texas.
"Countersigned at Topeka, Kansas, this 1st day of Mar. 1926.
"[Signed]  Wilder S. Metcalf, President.
"[Signed]  E. G. Foster, Secretary.
"Countersigned: C. Weisner."

With respect to the renewed contract of insurance, appellee alleged, in substance:
(a) The policy as written, including the rider, required appellant to pay indemnity at the rate of $400 per month so long as appellant was totally disabled from performing each and every duty pertaining to his occupation from illness originating within the limits of the policy, without respect to whether appellee was or was not confined within the house during the period, or such policy as written was so ambiguous with respect to this as to require proof of the circumstances and conversations between the parties leading up to its execution, which circumstances and conversations manifested an intention between the parties that it should be so construed.

(b) It was the intention of the parties that the policy when renewed should contain a rider requiring appellant to pay appellee at the rate of $400 per month from sickness originating within the limits of the policy so long as such sickness totally disabled appellee from performing each and every duty pertaining to his occupation, without respect to whether such sickness during that period confined him within the house or not, and if the policy as written and as construed did not carry out such agreement, then the failure to do so arose from a mutual mistake in the preparation of the rider and the policy, and the rider should be so reformed as to carry out the mutual agreement.

(c) In event the failure of appellant to place a rider in the policy, requiring it to pay $400 per month for illness originating within the limits of the policy so long as appellee was totally disabled from performing each and every duty pertaining to his occupation, without respect to whether or not during that period he was confined within the house, was not the result of a mutual mistake, then and in that event the failure to do so constituted fraud upon the part of appellant, in that appellant, through its general agent and district manager, promised and represented to

appellee such would be done for the purpose of inducing appellee to renew the policy at an increased premium, which promises and representations were relied upon by appellee, and which promises, together with the failure of appellant to place the rider agreed upon in the policy, constituted fraud upon appellant's part requiring the reformation of the policy, in that appellant, through its general agent and district manager, at the time of making such promises and at the time of placing the rider in the policy, did not intend to perform the promises and agreements made, but made such promises and agreements for the fraudulent purpose of inducing appellee to agree to the renewal and reinstatement of his policy. This is an alternative allegation, and reformation was sought by appellee for the fraud of appellant and the mistake of appellee in relying thereupon and believing the policy when delivered to him contained the agreement made.

Appellee further alleges that upon receipt of the policy containing the rider, which was delivered to his office in his absence, he read the caption of the rider prominently displayed in capital letters, "Nonconfining Illness $400.-00 per Month," and assumed the rider did carry out the real agreement as made and provided for the payment of indemnity as represented and agreed upon at the time of the renewal of the policy, and did not pay any further attention or read further into the rider or cause the same to be construed by his attorneys, believing and relying at all times upon the truthfulness of the representations and promises as made by the appellant through its general agent and district manager, and relied upon the faithful performance of the agreement with respect thereto and paid the enhanced premium upon the faith of such agreement. He would not have accepted the policy nor paid the enhanced premium had he known there was any question about the policy and rider placed therein containing the true agreement as made.

It is alleged in detail that more than 15 days after the 1st of March, 1926, appellee contracted illness, and on June 27, 1926, became totally disabled as a result thereof from performing each and every duty pertaining to his occupation, which illness and total disability continued up to and including the 27th of April, 1927, and thereafter up to the filing of the suit.

It is alleged that all notices required had been duly given; that appellant had paid the sum of $2,400 covering the first six months of such disability, but has failed and refused to pay the amounts due from December 27, 1926, to April 27, 1927, totaling the sum of $1,600, for which he sues.

Appellee further alleged that because of appellant's failure and refusal to pay the amounts due under the policy he has been required to employ attorneys, naming them, and has contracted to pay such attorneys a reasonable attorney's fee, alleged to be $750, for which he also sues.

Appellant answered by general demurrer and special exceptions, general denial and special answer, to the effect that appellee had received the policy with rider attached, had kept same in his possession for months; that it was his duty to have inspected the policy and ascertained whether its terms embraced the contract as made; that appellant had paid and tendered appellee the full amount due him by the terms of the policy, and pleaded the terms of the policy to that effect, and denied the authority of its general agent and district manager to make any agreement other than was written in the terms of the policy.

By supplemental pleading appellee denied the allegations of appellant's answer, alleged that Lee was acting within the scope or apparent scope of his authority as held out by appellant, and relied upon by the appellee.

The case was submitted to the jury upon the controverted issues of fact, and upon such issues the jury found substantially as follows:

1. During the period from June 27, 1926, to April 27, 1927, Dr. Lee Woodward was afflicted with sickness or disease which had its inception more than 15 days after the 1st of March, 1926.

2. Such sickness or disease, as found in the above answer, wholly and continuously disabled and prevented appellee from performing any and every duty pertaining to his occupation during the period from June 27, 1926, to April 27, 1927.

3. Such sickness or disease as found above actually, necessarily, and continuously confined appellee within the house for the period of time from June 27, 1926, to April 27, 1927.

Under this issue the court defined to the jury the meaning of the phrase "actually, necessarily and continuously confined to the house."

4. (To be answered conditionally.)

5. (To be answered conditionally.)

6. R. H. Lee, acting for and on behalf of appellant, promised appellee that appellant would put into his policy a rider or clause providing that appellant would pay appellee indemnity at the rate of $400 per month for nonconfining illness the same as for confining illness, and for such period of time as he should be totally disabled and prevented from performing each and every duty pertaining to his occupation, as a result of his illness, if appellee would agree to the renewal of his policy and pay an enhanced premium.

7. R. H. Lee, in making such promise as found in answering the next preceding question, was acting within the scope or apparent scope of his authority as district manager of appellant company.

8. Appellee relied upon such promise in agreeing to the reinstatement of his policy

and the payment of premiums therein prior to June 27, 1926.

9. Such promise as found under issue No. 6, above, was fraudulently made by R. H. Lee for the purpose of inducing appellee to agree to the reinstatement of his policy and the payment of increased premiums thereon. The court defined to the jury the phrase "promise fraudulently made."

10. $750 is the reasonable cash amount of attorney's fees for appellee in this case.

Upon the issues found the trial court entered judgment reforming the policy of insurance and the rider placed thereon as pleaded, not confining the policy obligation to confinement within the house, nor restricted to a period of six months or any other fixed time, but to continue through the entire time appellee be totally and continuously disabled from performing each and every duty pertaining to his occupation from the illness or disease from which he suffered during the period from June 27, 1926, to April 27, 1927, as found by the jury in response to issue No. 1, and without prejudice to other actions for indemnity for time or times subsequent to April 27, 1927. Judgment was rendered in appellee's favor for the sum of $1,600, and $192 representing the 12 per cent. penalty upon the $1,600, and the further sum of $750 as attorney's fees; from which judgment appellant prosecutes this appeal.

## Opinion.

■ The petition and the findings of the jury, on the facts, we think, support a reformation of the policy and the judgment under the policy as reformed; also, for the same amount under the policy as actually written. Confinement within the house is not necessary to a recovery under the policy as reformed. We need not discuss the sufficiency of the evidence as to appellee's confinement within the house during the period involved in the suit, nor the correctness of the definition given the jury by the court of the phrase "confining illness," since each became immaterial under the reformed policy as written.

Appellee's cause of action, as we view it, is based on his pleading and proof that the policy of insurance delivered to him with the nonconfining illness rider attached, and made to form a part of the policy, does not speak the real agreement between the parties to the agreement as to the insurance appellee should have on the nonconfining illness feature of the policy, and that such was caused either by fraud or mutual mistake. The jury found for appellee on those issues.

■ The rule is well settled that a policy of insurance, like any other contract, may be reformed and made to speak the real agreement of the parties when such is caused either by fraud or mutual mistake in issuing the policy. The rule as above, it seems, is not challenged by appellant, but it is so essential a part of

the real difference between the parties, and apparently the only difference, that we think to state the rule and refer to some of the cases that sustain it.

In Ætna Ins. Co. of Hartford, Conn., v. Brannon, 99 Tex. 391, 89 S. W. 1057, 2 L. R. A. (N. S.) 548, 13 Ann. Cas. 1020, where the insured against loss by fire accepted a policy without noticing a mistake in the policy in the description of the property insured, it was held that the insured was not precluded from having the mistake corrected.

■ In Delaware Ins. Co. v. Hill (Tex. Civ. App.) 127 S. W. 283 (writ refused), it is held that a policy which does not, by reason of mutual mistake of the parties thereto, embody the real intention of the insurer and the assured, may be reformed in equity, and where, as in this state, a court exercises the functions of law and equity at the same time, it may upon proper pleading be reformed upon the trial of a case in which such mistake is shown. The real intention of the parties at the time the policy was made will control. While the court cannot make a new contract for the parties, the court may make the policy contract speak the agreement as made. Where the assured accepts a policy without dissent, the presumption is that he knows its contents, and the burden then is upon him to overcome such presumption by proving that he did not know its contents, as by showing that when he received it he put it away without examining it, or that he relied upon the knowledge of the insurer and supposed that he had correctly drawn the policy.

Other cases we have examined which announce the same rule, and to which we refer without comment: Merchants' & Manufacturers' Inter-Insurance Alliance v. Hansen (Tex. Civ. App.) 258 S. W. 257; Henenberg v. Winn et al. (Tex. Civ. App.) 1 S.W.(2d) 432.

We think the above cases completely answer several of appellant's propositions and contrary to its contention.

■ Appellant moved the court to exclude from the jury and from the record all testimony of Dr. Woodward as to conversations had between Dr. Woodward and R. H. Lee, the company's agent and representative, in negotiating with reference to the sale and purchase of an insurance policy, and which negotiations resulted in the policy involved here, and especially the conversations resulting in the matters pertaining to the nonconfining illness of Dr. Woodward, and the matters of the alleged agreement between them as to what the rider in the policy should contain, but which matters of the alleged agreement were not written in the policy as delivered. The basis of the objection to the evidence is, in effect, that the policy contract as delivered is plain, unambiguous, and intelligible on its face, and that the law presumes that in making the contract all the negotiations and matters of agreement are written in the contract. It is true, as contended, that

the law does so presume, but such presumption is not a conclusive presumption where, as here, it is alleged that the contract as delivered does not speak the true agreement, and that it does not do so by reason of fraud or mistake. To hold as contended for there could be no such proceeding as a reformation of a contract, or a showing that a contract as delivered was not the contract as really made.

Appellee objects to a consideration of the above assignment, but we have concluded to overrule the motion without passing upon its merits.

The jury found that R. H. Lee was acting within the scope, or apparent scope, of his authority in making the promise to Dr. Woodward that the appellant company would put into his policy a rider or clause providing that the company would pay Woodward indemnity for nonconfining illness for such period of time as he should be totally disabled and prevented from performing each and every duty pertaining to his occupation as a result of his illness.

Appellee in his suit has construed the promise to extend beyond the six months' life of the policy, and in fact for an indefinite length of time, limited only by the total disability of Dr. Woodward to perform each and every duty pertaining to his occupation. In the absence of specific and satisfactory evidence to the contrary, we think the life of the policy would be for the six months' period. The evidence, however, is sufficient to sustain the jury's finding.

Appellee, after testifying to having a policy with appellant, which he dropped in January, 1926, said in part: "He (Mr. Lee) said that he wanted to renew my policy. I said to him, I'm sorry but I have other insurance now. He said, well, you had better let me renew this. I said, no, my insurance is paid up until the first of March. He said, I have something that might appeal to you. He said, for additional premium I can put a rider in your policy, which will pay you for nonconfinement the same as confinement. I said how much will that cost me? And he said 20% more premium, so I said, my insurance is paid up until the first of March and I like my policy very much. He said, well, we are going to write insurance over here, we are going to begin to write life insurance and we are going to make you an examiner, and he said, we want you to renew your policy. (Then follows a conversation as to adjustment of claims not deemed material. Continuing witness said), I said, well, if you can put a rider in there * * * that will pay me for nonconfinement the same as confinement, * * * I will give you my policy and you can take it with you and renew it, and make it date from March 1st, because I have insurance paid up until March 1st. I asked him how long that would pay and he said indefinitely. I said, suppose a man would take down with Neuphritis, Bright's disease, or Tuberculosis? He said, it will pay him for nonconfinement just the same as it will pay him for confinement. I said, indefinitely? He said, yes, and he recited a case of tuberculosis * * * where they are paying him on just the same. I said, all right, you can renew my policy, and let it start from March 1st. * * * I mailed him a check and it was cashed. The check was for $41.40. That was the premium that was agreed upon between me and Mr. Lee."

Dr. Valin Woodward, referring to the above conversation between Mr. Lee and appellee, testified: "Mr. Lee explained that with an increase of 20% on the premium that there would be a rider placed in the policy that would pay $400 a month for nonconfining illness just the same as confining illness. I think it was stated that the $400 would be paid for six months, but he made it clear that if the man, at the end of six months was still totally disabled, that it would be paid just the same, that there would be no limit to it as long as the man was disabled."

The jury found that during the period from June 27, 1926, to April 27, 1927, appellee was afflicted with sickness or disease which had its inception more than 15 days after the 1st of March, 1926, which sickness or disease wholly and continuously disabled and prevented appellee from performing any and every duty pertaining to his occupation during the time above stated. The evidence is amply sufficient to sustain the findings. Propositions not specifically discussed are ruled by those discussed.

Finding no reversible error, the case is affirmed.