## HUEY v. AMERICAN NAT. INS. CO.
### No. 7660.

Court of Civil Appeals of Texas. Austin.
Dec. 2, 1931.

Rehearing Denied Jan. 6, 1932.

E. C. Zellner, of Belton, for appellant.

Tyler, Hubbard, Countess & White, of Belton, for appellee.

BAUGH, J.

Appellant sued appellee for damages alleging fraud of its agent in procuring his application for and delivery to him of a life insurance policy providing double indemnity for accidental death, when he had applied for, and the agent had represented to appellant that he was delivering to him, a life, health, and accident policy, providing monthly compensation of $86.10 for total disability from accident. The policy was delivered to appellant on March 12, 1929, and on April 12, 1929, he was totally disabled by accident. He alleged that he did not know that such misrepresentations were untrue until after his injury; that he relied upon the representations of said agent and was misled thereby. He asked for damages for such fraud, and in the alternative that the policy delivered to him be reformed so as to speak the true agreement, and that it be enforced accordingly. The case was tried to a jury upon special issues, and upon their findings judgment rendered that appellant take nothing; hence this appeal.

The jury found in response to the issues submitted: (1) That the agent of appellee represented to Huey that for a monthly premium of $4.46 said insurance company would deliver to him a policy providing $86.10 per month in case of total disability; (2) that such representations were made as a material inducement to Huey to apply for such insurance and to pay his monthly premiums; (3) that but for such representations Huey would not have applied to appellee company for insurance, and would not have paid such premiums; (4) that Huey did not know when he signed the application what kind of insurance policy it called for; (5) that he was guilty of negligence in not ascertaining the re-

citals contained in said application; (6) that when the policy was delivered to him he put it away for safe-keeping, and paid the premiums without knowledge of the kind of policy it was; (7) that in so doing he was guilty of negligence; (8) that he represented in his application that he had not consulted with, nor been treated by, a physician within seven years prior thereto; (9) that such representation was untrue; (10) that this representation was not a material inducement to the insurance company to issue said policy; (11) that the insurance company would not have issued said policy if said representation had not been made.

The insurance company, in addition to denying liability, asked for a cancellation of the policy issued by it, on the ground of said false representations of the applicant, and on the ground that he had failed to pay his premiums subsequent to July, 1930. The judgment denied appellant recovery, and canceled the policy.

Two major issues are presented: First, whether the appellee could urge as a defense against the fraud of its agent the negligence of the insured in failing to discover that fraud; second, whether it was authorized to cancel its policy because of a misrepresentation in the insured's application which the jury found was not a material inducement to the issuance of the policy.

The policy was applied for on March 6, 1929. The agent filled in the blanks in the application from information given him on the streets of Belton by Huey, who then signed the application. Huey testified that the agent Melvin was a cousin by marriage, solicited the insurance, and that he reposed full confidence in him, and believed what he said. The policy was delivered to appellant by Melvin on the streets of Belton on March 12th, and the first premium then paid. Huey testified that he took the policy home and placed it in his trunk for safe-keeping, relying upon the statements of Melvin that it was a life, health, and accident policy, and did not know that it was not until after he was disabled by accident on April 12, 1929.

We have grave doubts as to the sufficiency of the evidence to sustain the findings of the jury on the issues of Huey's negligence. Huey was a common laborer, 20 years of age, who knew nothing of insurance policies. The policy is in the record. The indorsement thereon of the kind of policy is: "20 pay Endowment at Age 85. Premiums payable for 20 years or until prior death. Double Accidental Death Benefit Disability Premium Waiver. Non-Participating."

The body of the policy contained tables, conditions, and limitations of liability peculiar to special insurance policies which the lay mind could scarcely be expected to understand. The language of Judge Neill, in Insurance Co.

v. Hargus (Tex. Civ. App.) 99 S. W. 580, 582, would appear to be peculiarly applicable here: "The ordinary layman should not be charged with knowing the meaning of technical terms, ofttimes employed as traps to catch the unwary, used by life insurance companies and their agents, especially when informed by an agent who solicited the policy that the application presented to be signed was for such as has been agreed upon by him and the applicant."

Regardless of that, however, under the facts of this case, assuming that the evidence was sufficient to support the jury findings, the insurance company cannot, we think, urge such negligence as a defense against the misrepresentations of its agent; nor that it was the duty of the insured to inquire into their truthfulness. In Labbe v. Corbett, 69 Tex. 509, 6 S. W. 808, 811, the court said: "'When once it is established that there has been any fraudulent misrepresentation, * * * by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by proper inquiry. He has a right to retort upon his objector: "You, at least, who have stated what is untrue, * * * for the purpose of driving me into a contract, cannot accuse me of want of caution because I relied implicitly upon your fairness and honesty."' Ry. Co. v. Kisch, L. R. 2 H. L. 120."

This rule has been frequently reiterated and followed. Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; Graves v. Haynes (Tex. Com. App.) 231 S. W. 385; Sanders v. Hickman (Tex. Civ. App.) 235 S. W. 278; Com. Jewelry Co. v. Braczyk (Tex. Civ. App.) 277 S. W. 755; Johnson v. Sugg (Tex. Com. App.) 291 S. W. 859. And we think the rule should apply as well to insurance contracts as to any other. While the rule obtains that one who accepts a policy without dissent is presumed to know its contents, he can overcome such presumption by showing that he put same away without reading it, in reliance upon the representations of its agents and upon the knowledge and integrity of the insurer to correctly draw the policy applied for. Delaware Ins. Co. v. Hill (Tex. Civ. App.) 127 S. W. 283; M. & M. Inter-Ins. Alliance v. Hansen (Tex. Civ. App.) 258 S. W. 261; Liberty Life Ins. Co. v. Woodward (Tex. Civ. App.) 12 S.W.(2d) 246. This is what appellant was shown to have done in the instant case.

Appellee cites us particularly to the following cases upon which the trial court obviously relied in submitting the issues of negligence of appellant and in rendering his judgment: Equitable Life v. Maverick (Tex. Civ. App.) 78 S. W. 560, followed and relied upon in Mutual Life Ins. Co. v. Hargus (Tex. Civ. App.) 99 S. W. 582, and Federal Life Ins. Co. v. Hoskins (Tex. Civ. App.) 185 S. W. 609. All of

these were decisions by Courts of Civil Appeals, and no writs applied for. Each of them was a suit by the insured to cancel a policy issued to him, and to recover or cancel notes given in payment of premiums, on the ground that the agent had fraudulently represented that one character of policy would be issued, but actually delivered a materially different policy. In passing upon the sufficiency of the pleadings or on the charge of the court, those cases do announce that "One applying for life insurance, who did not know the truth of matters concerning which an insurance agent made false representations, and relied on the representations of the agent, though he could have informed himself of the truth by means of information at hand, will not be estopped to complain of their falsity unless he was inexcusably negligent in not informing himself."

Just what the courts in these cases meant by "inexcusable negligence" is not clear. It is to be noted that in none of those cases was inexcusable negligence found. Obviously the court had clearly in mind a much greater degree of negligence than that term usually implies; an extreme case of neglect, or of failure to take cognizance of patent and obvious facts. A careful reading of these cases discloses, we think, that they recognize the rule that ordinary negligence of one party to a contract is not available as a defense against the fraud of the other on whose misrepresentation the injured party relies.

■ Not only was the test of "inexcusable negligence" on the part of appellant not submitted to the jury; but the evidence does not sustain any such neglect on his part. The policy was delivered to him on March 12, 1929, and placed away for safe-keeping under the assurance of the agent and in the belief that he had the policy he desired. On April 12th, one month later, he was totally disabled by an accident. Nothing was shown to have occurred meantime which would cause him to examine the policy, nor to arouse any suspicion as to its character. We conclude therefore that the court erred in submitting the issues as submitted under the proof shown by the record, and in basing his judgment thereon.

The next issue relates to the cancellation of the policy delivered to Huey. In the application signed by Huey was a representation that he had not consulted a physician in the preceding seven years, and had not suffered from any disease. One physician testified, however, that about two years prior to his accident he had treated Huey for a rheumatic condition of his feet; but that he only gave him a prescription.

■ There is no evidence that such misrepresentation was fraudulently made. The jury found that it was not a material inducement to the issuance of the policy; and at the same time that the appellee company would not have issued the policy had the representation not been made. These findings are obviously conflicting. The statement in the application was only a representation and not a warranty, and a defense based thereon is governed by the provisions of article 5043, R. S., denying to the insurance company such defense unless it be shown "that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable," a question of fact for the determination of the jury. The issues submitted to the jury were obviously intended to elicit findings within the purview of said article 5043, but are insufficient for that purpose. That a misrepresentation was a material inducement or not to the issuance of a policy is not necessarily a determination of its materiality to the risk insured against, and a jury finding that but for such misrepresentation the insurance company would not have issued the policy cannot be construed as a finding that same contributed to the injury suffered by appellant. There is totally lacking any evidence to show that the condition for which Huey was treated two years before contributed in any manner to his injury on April 12, 1929. The materiality of the representation to the risk assumed was not clearly and sufficiently submitted. Whether or not the fact misrepresented or concealed would reasonably have increased the chances of the loss insured against, or might reasonably have caused the insurance company to refuse to issue the policy, or to decline to take such risk unless at a higher premium, or which would impose a materially greater risk on the insurer, are matters for consideration in determining the materiality of the misrepresentation. Aetna Life Ins. Co. v. King (Tex. Civ. App.) 208 S. W. 348; Gorman v. Jefferson Life Co. (Tex. Civ. App.) 275 S. W. 248; Indiana, etc., Ins. Co. v. Smith (Tex. Civ. App.) 157 S. W. 755; St. Paul F. & M. Ins. Co. v. Huff (Tex. Civ. App.) 172 S. W. 755; 32 C. J. 1286. In Southland Life Ins. Co. v. Norton (Tex. Civ. App.) 297 S. W. 1083, Judge Pleasants announces the settled rule of decision in this state to be that to be material such illness must have been of such character as to affect the general health of the applicant and lessen the term of his life expectancy. We find no competent evidence to that effect in the record. In view of this fact and the conflicting findings of the jury above indicated, such findings cannot sustain the trial court's judgment in canceling said policy.

■ Nor do we think said policy was subject to cancellation on the ground that Huey had failed to pay his monthly premiums subsequent to the date of his injury. If, as contended by him, the contract which he actually made with the company and which he as-

serts in this suit, that is, a policy awarding him monthly compensation for his injury, is to be enforced, that policy matured when he received the injuries totally disabling him, and as to those provisions his failure to pay further premiums would not affect the company's liability.

His cause of action asserted is not, however, based upon the policy delivered to him. Obviously the minds of the parties never met on that contract, and it was never a binding contract between them. Mutual Life Ins. Co. v. Hargus, supra; Commercial Jewelry Co. v. Braczyk, supra, and numerous cases there cited. The cancellation of that policy would appear therefore to be immaterial. Insurance contracts like any other contract may be reformed and made to speak the real agreement of the parties when failure of same to do so is due to fraud or mutual mistake. Liberty Ins. Co. v. Woodward (Tex. Civ. App.) 12 S.W.(2d) 246. To authorize reformation, however, the proof must be clear and convincing. Delaware Ins. Co. v. Hill (Tex. Civ. App.) 127 S. W. 283 (writ ref.); M. & M. Inter-Ins. Alliance v. Hansen (Tex. Civ. App.) 258 S. W. 261; 14 R. C. L. 903. It is not necessary, however, for the contract to be reformed in order to allow a recovery; but the court may render a judgment in accordance with the true contract as proven. Aetna Ins. Co. v. Brannon, 99 Tex. 391, 89 S. W. 1057, 2 L. R. A. (N. S.) 548, 13 Ann. Cas. 1020; Fitch v. Lomax (Tex. Com. App.) 16 S.W.(2d) 530, 66 A. L. R. 758, and cases there cited. Insured's damages in such case would be the amount he would be entitled to receive under the contract proven.

Appellant next contends that because he was totally and permanently disabled he was entitled to recover the $86.10 per month during his 42.2 years expectancy of life as shown by the "American Experience Table of Mortality." Such was not his measure of damages. The mortality table offered is computed upon averages of those in good health and under normal conditions. Obviously a person so critically injured as to be permanently and totally disabled could not hope to live as long as if no such injury had occurred. The table of mortality offered could apply only to those in good health; not to persons permanently injured, and would not be competent evidence as to the amount of appellant's damages. There was no error therefore in sustaining exceptions to the pleadings in this respect, nor in excluding the evidence tendered. Washington Life Ins. Co. v. Lovejoy (Tex. Civ. App.) 149 S. W. 398 (writ ref.).

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for another trial.

Reversed and remanded.